**FORD WHOLESALE COMPANY, INC.
OF SAN JOSE, a corporation,
Appellant,**

v.

**FIBREBOARD PAPER PRODUCTS COR-
PORATION et al., Appellees.**

No. 72–2570.

United States Court of Appeals,
Ninth Circuit.

Feb. 20, 1974.

See also D.C., 319 F.Supp. 612.

Maxwell M. Blecher (argued), of Blecher, Collins & Hoecker, Hansen & Dolle, Los Angeles, Cal., Joseph M. Alioto, Peter J. Donnici, San Francisco, Cal., for appellant.

E. Judge Elderkin (argued), Thomas A. Welch of Brobeck, Phleger & Harrison, San Francisco, Cal., for appellees.

OPINION

Before CHAMBERS and KOELSCH, Circuit Judges, and EAST,* District Judge.

EAST, Senior District Judge:

The plaintiff-appellant (Ford) instituted this private antitrust action for damages under Section 4 of the Clayton Act [15 U.S.C. § 15] against the defendant-appellee Fibreboard Paper Products Corporation (Fibreboard) and the remaining above-named defendants alleging that Fibreboard and the other defendants "combined and conspired to monopolize, attempted to monopolize and did monopolize trade and commerce in the relevant market in violation of Sections 1 and 2 of the Sherman Act [15 U.S.C. §§ 1, 2]."

The proceedings in the District Court progressed through a jury verdict in favor of Ford for a substantial amount.

Thereafter, the District Court, 344 F.Supp. 1323, upon various motions of Fibreboard concluded "that the evidence on the interstate issue [was] wholly insufficient, or at least so insubstantial and lacking in probative value, that there is no evidence whatsoever from which the jury might rationally have concluded that defendants restrained interstate commerce;", set aside the jury verdict and judgment thereon in favor of Ford and on May 30, 1972, entered judgment for Fibreboard that the action be dismissed with costs to neither party.

Ford appeals and Fibreboard makes no cross-appeal from various adverse orders.

Ford asserts and we agree that "[t]he sole question before this court [on appeal] is whether the District Court was erroneous in ruling that interstate commerce was not involved in the defendants' anticompetitive conduct which otherwise constituted a violation of Section 1 of the Sherman Act. [15 U.S.C. § 1.]"

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

Assuming arguendo then that there was sufficient material evidence in the record to support the jury's finding on the *substantive issue* of Fibreboard's anticompetitive conduct, we turn to the *jurisdictional issue* of interstate commerce involvement of Fibreboard's anticompetitive conduct.

The record evidence on that issue is ably marshaled, surveyed and analyzed in the Memorandum of Decision of the District Court reported in Ford Wholesale Company, Inc. of San Jose v. Fibreboard Paper Products Corporation, et al., 344 F.Supp. 1323 (1972); and from our review of the record we are satisfied to refer to and rely upon that marshaling as a statement of facts herein.

We conclude for the same reasons and upon the same legal grounds set forth in the District Court's Memorandum of Decision that the judgment entered thereon is correct in fact and at law.

Also, we are satisfied that the rationale utilized by the District Court for its judgment is wholly compatible with and justified under the test of the independent jurisdictional interstate commerce issue under the Sherman Act as correlated from prior authority and delineated in Rosen v. Rossmoor Corporation, Golden Rain Foundation, Leisure World Foundation, and Crestmark Carpet and Drapery Company, 9th Cir., 487 F.2d 373, 1973.

"The jurisdictional issue under the Sherman Act is distinct from the substantive issue of whether a given defendant's conduct was of the kind prohibited by the Act. Rasmussen v. American Dairy Ass'n, 472 F.2d 517, 521–524 (9th Cir. 1973). The jurisdictional issue is one of constitutional power. Congress intended to extend the substantive prohibitions of the Sherman Act to the farthest reaches of its power under the Commerce Clause, thereby mandating for this nation a competitive business economy to the full extent that Congress could do so under its constitutional power to regulate interstate and foreign com-

merce. United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 558–559, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). The jurisdictional question, therefore, is whether defendants' conduct had a sufficient relationship to interstate commerce to be subject to regulation by Congress. Rasmussen v. American Dairy Ass'n, *supra*, 472 F.2d at 521. This, in turn, depends upon whether defendants' conduct had a 'substantial economic effect' upon interstate commerce, or, ' "concerns more States than one" and has a real and substantial relation to the national interest' in a competitive economy." Citing authorities, at pages 375 and 376;

"Thus, although both the substantive and jurisdictional issues are often confusingly described in terms of the 'effect' of particular conduct upon commerce, as if a common question were presented, see, e. g., Las Vegas Merchant Plumbers Ass'n v. United States, 210 F.2d 732, 739–740, n. 3 (9th Cir. 1954), the substance of the two inquiries is quite different. An unreasonable restraint on competition may have no impact upon interstate commerce, or an impact so insignificant that regulation under the Commerce Clause is not justified as a means of protecting interstate commerce. Page v. Work, 290 F.2d 323, 331–332 (9th Cir. 1961)." and

"When the issue is whether jurisdiction exists, the focus is upon interstate commerce: whether the defendant's conduct—unreasonably restrictive of competition or not—has a sufficient impact on interstate commerce to justify regulation under the Commerce Clause."

It is manifest from the record that Fibreboard's anticompetitive conduct had no significant impact on interstate commerce to justify regulation under the Commerce Clause.

When the test of *Rosen* was applied to the facts in that case, it was apparent that the defendants' anticompetitive con-

duct directly and substantially interfered with distribution of goods "in the flow" of interstate commerce in that carpeting coming into California from other states could not meet their destined use but remained in the warehouse of *Rosen*.

Likewise, the undisputed facts in Copp Paving Co., Inc. v. Gulf Oil Co., et al., 9th Cir., 487 F.2d 202, 1973, also relied upon by Ford, presented an anticompetitive conduct plagued interstate enterprise so patently diverse from Ford's enterprise and its non-involvement in interstate commerce that further comment is not warranted except to say *Copp* was engaged in producing "instrumentalities of interstate commerce."

Affirmed.