Charles H. Spooner City Attorney Coral Gables
QUESTION:
Does s. 205.042(3), F. S., permit the City of Coral Gables to levy an occupational license tax on wholesalers who are not licensable under s. 205.042(1) or (2), since a large percentage of the products of these wholesalers is shipped by interstate commerce to the wholesalers?
SUMMARY:
Section 205.042(3), F. S., permits a municipality to levy an occupational license tax on persons engaged in interstate commerce `within its jurisdiction,' if not prohibited by the Commerce Clause of the United States Constitution. A wholesaler located outside the city limits, who purchases goods in interstate commerce for sale to retailers located in the city limits, may be engaged in interstate commerce `within [the municipality's] jurisdiction' depending on the nature of his contractual relationship with his customers. Municipal occupational license taxes will not be prohibited if there are sufficient `local incidents' separable from interstate commerce.
It is a fundamental principle that municipalities do not possess inherent licensing power; however, such licensing power is generally delegated to municipalities by the state. 9 McQuillinMunicipal Corporations s. 26.22 (1964); 23 Fla. Jur. MunicipalCorporations s. 149 (1959). Sections 166.201 and 205.042, F. S., have authorized municipalities to levy an occupational license tax in certain instances. Section 205.042(3) permits the imposition of an occupational license tax upon a person conducting business in interstate commerce who has no permanent business location or branch office in the taxing municipality, if such a tax is not prohibited by the Commerce Clause of the United States Constitution.
As a prerequisite to the imposition of an occupational license tax under s. 205.042(3), F. S., a person must be conducting business in interstate commerce. The factual situation you have presented depicts wholesalers warehoused outside the city limits who receive products shipped by interstate commerce and sell these products to retail stores within the city. Our first concern is whether these wholesalers are engaged in `interstate commerce.' It is not sufficient to find that the wholesaler is engaged in interstate commerce anywhere at all. Rather, the wholesaler must be engaged in a business, occupation, or profession, in interstate commerce `within its (city's) jurisdiction.' Section 205.042, F. S.
It is generally recognized that:
 [C]ommerce begins when the movement of the product actually begins, and ends when the product comes to rest at its destination. Every part or link of a continuous passage from a point in one state to a point in another state is a transaction of interstate commerce, and a temporary pause or break in the transportation does not necessarily divest a shipment of its interstate character. [15 C.J.S. Commerce s. 25 (1967).]
A similar wholesale warehousing operation was considered in the landmark case of Walling v. Jacksonville Paper Co., 317 U.S. 564
(1943), wherein Justice Douglas enunciated three circumstances in which goods shipped into a state were considered to remain within the `flow of commerce.' Those circumstances are:
 1. Where the goods are purchased by the wholesaler or retailer upon the order of a customer with the definite intention that they are to go at once to the customer.
 2. Where the goods are purchased by the wholesaler or retailer from the supplier to meet the needs of specified customers pursuant to some understanding with the customer although not for immediate delivery.
 3. Where the goods are purchased by the wholesaler or retailer based on anticipated needs of specific customers, rather than upon prior orders or contracts.
Cf. Galbreath v. Gulf Oil Corporation, 413 F.2d 941 (5th Cir. 1969); LoCicero v. Humble Oil and Refining Company, 319 F. Supp. 1133
(E.D.La. 1970); and Ford Wholesale Co., Inc. v. Fibreboard P.P. Corp., 344 F. Supp. 1323 (N.D.Cal. 1972), aff'd.493 F.2d 1204 (9th Cir. 1974), cert. den. 419 U.S. 876 (1974). Goods in the third category above, however, require a greater particularity of evidence to show that they are `different from goods acquired and held by a local merchant for local disposition.' Walling, supra, at 570. Galbreath, supra, at 945.
In Walker Oil Company v. Hudson Oil Company of Missouri,414 F.2d 588, 590 (5th Cir. 1969), the court held that the three circumstances recognized in Walling were not applicable to its factual situation because `[t]he demands and identity of the indefinite members of the consuming public were unascertainable prior to the time of sale.' The sales were found to be made after the flow of interstate commerce had ended and the goods were at rest within the state. Cf. Muhammed Temple of Islam v. City of Shreveport, La., 387 F. Supp. 1129, 1133 (W.D.La. 1974). In a companion case to Walling, the Supreme Court found that interstate movement had ended at the wholesaler's warehouse. It based its decision on the following facts summarized by the state court:
 It buys its merchandise from local dealers in other states, has it delivered by truck and rail, unloaded into its store and warehouse and from there sells and distributes it to the retail trade. While some of the produce and fruit is processed, much of it is sold in the condition in which it is received. The corporation owns all of its merchandise and makes its own deliveries. It makes no sales on commission nor on order with shipments direct from the dealer or producer to the retail purchaser. [Higgins v. Carr Brothers Co., 317 U.S. 572 (1943).]
 Cf. Reliance Fertilizer Co. v. Davis, 169 So. 579 (Fla. 1936).
 From the above analysis it is apparent that each case must be decided on the basis of its own unique factual circumstances, and for that reason I am unable to render a definite opinion on this issue. See Boston Stock Exchange v. State Tax Commission, 50 L.Ed.2d 514, 520 (1977). If the wholesalers in question are found to be selling goods that previously have come to rest in the state, then their business with retailers would be intrastate as opposed to interstate commerce and would not be within the licensing purview of s. 205.042(3). If, on the other hand, the wholesalers are found to be selling goods in the `current or flow of commerce,' then their business with retailers would be interstate
commerce and would initially qualify for licensing under s. 205.042(3), if not otherwise prohibited by the Commerce Clause of the United States Constitution.
 Assuming arguendo that the wholesalers in question are transacting business in interstate commerce within your city's jurisdiction, we reach the next stage of analysis, i.e., whether such an occupational license tax would be prohibited by the Commerce Clause of the United States Constitution. The Commerce Clause does not operate to relieve those engaged in interstate commerce from their just share of the tax burden occasioned by local incidents or activities of such instrumentalities of interstate commerce. See Armstrong v. City of Tampa, 118 So.2d 195 (Fla. 1960); Green v. Western Union Telegraph Company, 123 So.2d 712 (Fla. 1960); and City of Jacksonville v. Florida Fresh Water Corporation, 247 So.2d 739 1 D.C.A. Fla., 1971). The Armstrong decision, supra, at 199, sums up the cases interpreting the limitation of s. 8, Art. I, of the Constitution of the United States:
 The sum of the cases simply is that if the local tax has the effect of excluding or precluding or impeding the flow of commerce into and between the states then the tax is offensive to the quoted constitutional provision. . . . This is so even though it might not be discriminatory in nature or aimed at interstate commerce for the benefit of intrastate commerce . . . .
As a general rule, municipal occupational license taxes will not be prohibited if there are sufficient `local incidents' separable from interstate commerce. See AGO's 073-162 and 073-172 and Olan Mills, Inc. v. City of Tallahassee, 100 So.2d 164 (Fla. 1958). The factual determination of what is separable from the scheme of interstate or intermunicipal business activity is to be made in the first instance by local authorities. Attorney General Opinion 073-162. Note that the United States Supreme Court in Nippert v. City of Richmond, 327 U.S. 416 (1946), laid down the rule that it is not sufficient to find `some local incident which might be recognized as separate and distinct' from the interstate commerce because such an approach would subject all interstate commerce to state taxation and without regard to the substantial economic effects of the tax upon the commerce:
 . . . For the situation is difficult to think of in which some incident of an interstate transaction taking place within a state could not be segregated by an act of mental gymnastics and made the fulcrum of the tax. All interstate commerce takes place within the confines of the states and necessarily involves `incidents' occurring within each state through which it passes or with which it is connected in fact. And there is no known limit to the human mind's capacity to carve out from what is an entire or integral economic process particular phases or incidents, label them as `separate and distinct' or `local,' and thus achieve its desired result.
The United States Supreme Court expressed in Nippert concern for the cumulative effect of flat municipal taxes laid in succession upon the itinerant merchant as he passes from town to town. It is apparent that the Florida Supreme Court recognizes the concern expressed in Nippert, for in the Armstrong case, supra, the court found a flat sum license tax, which the City of Tampa attempted to impose, exclusory of interstate commerce for the simple reason that the tax had to be paid as a condition precedent to engaging in interstate commerce. The court further pointed out that a privilege tax is burdensome for the fact that it is subject to being duplicated by every community entered by the solicitors who are engaged in the interstate transaction.
Several cases in this state have dealt with the issue of municipal taxation of businesses located within the state which do not have a business location or office within the taxing city. In Duffin v. Tucker, 153 So. 298 (Fla. 1934), the court held that the solicitation of sales and the subsequent delivery of the items sold were not subject to local occupational licensing other than by the municipality wherein the home office was located because of the intermunicipal character of the sales operation. As noted in Isern v. City of West Miami, 244 So.2d 420 (Fla. 1971), it generally has been held that an activity may not be put under mandate to revenue license if it is inseparable from a scheme of activity outside the licensing municipality's jurisdictional limits. Cf. AGO 76-234. Moreover, pursuant to s. 205.063, F. S., vehicles used by any person licensed under Ch. 205, F. S., for the sale and delivery of tangible personal property at either wholesale or retail from his place of business on which a license is paid shall not be construed to be a separate place of business, and no license may be levied on such vehicles or the operators thereof as salesmen or otherwise by a municipality, any other law to the contrary notwithstanding. Cf. Con Agra v. City of Pensacola, 286 So.2d 605 (1 D.C.A. Fla., 1973), holding that a city ordinance imposing a `license' for the privilege of using the city's streets for distributing or delivering merchandise by a wholesaler located and licensed in another county contravened the precursor statute of s. 205.063 containing essentially the same provisions.
Perhaps the case closest to your situation is West point Wholesale Groc. Co. v. City of Opelika, 354 U.S. 390 (1957). The City of Opelika imposed a flat sum annual privilege tax of $250 upon any firm engaging in the wholesale grocery business which delivers groceries in the city from points outside the city. The appellant's only contact with the City of Opelika was the solicitation of orders and the delivery of goods. Similar to the situation you have proposed, the appellant was located in the state but outside the city limits. The court relied on Nippert,supra, in holding that:
 [A] municipality may not impose a flat-sum privilege tax on an interstate enterprise whose only contact with the municipality is the solicitation of orders and the subsequent delivery of goods at the end of an uninterrupted movement in interstate commerce, such a tax having a substantial exclusory effect on interstate commerce. [West Point Wholesale Grocery Co., supra, at 391.]
The court in Dunbar-Stanley Studios, Inc. v. Alabama, 393 U.S. 537
(1969), held that solicitation and delivery were minimal activities within a state and without which the interstate commerce could not exist. The act of photography was found to be a local activity, separable from the interstate process, on which the license tax could be levied. Other factors, in addition to solicitation and delivery, that should be considered in your situation are: Where the sales contracts are entered into; where the orders for goods are approved; and where payment for the goods is made. Depending on the particular method of operation of a wholesaler, the occurrence of the above-mentioned activities within the city limits appears to provide a `separable local incident' upon which an occupational license tax can be imposed.See Graybar Electric Co. v. Curry, 189 So. 186 (Ala. 1939),aff'd. 308 U.S. 513 (1939).
In view of the factual circumstances involved, I am unable to render a definite opinion on your authority to impose an occupational license tax on the wholesalers in question. However, it appears that unless the wholesalers in question engage in a `local activity,' other than solicitation and delivery, that is separable from the interstate process, such an occupational license tax would violate the Commerce Clause of the United States Constitution. Your question is answered accordingly.
Prepared by: Joseph C. Mellichamp III, Assistant Attorney General
Gary Preston Legal Intern