594 F.2d 730
 1979-1 Trade Cases 62,528
 THORNHILL PUBLISHING COMPANY, INC., a Washington
Corporation, Plaintiff-Appellant,
v.
GENERAL TELEPHONE & ELECTRONICS CORPORATION, General
Telephone Company of the Northwest, Inc., and
General Telephone Directory Company,
corporations, Defendants-Appellees.
 No. 76-3428.
 United States Court of Appeals,
Ninth Circuit.
 Feb. 6, 1979.
Rehearing Denied March 22, 1979.
 
 1
 Joseph M. Alioto (argued), San Francisco, Cal., for plaintiff-appellant.
 
 
 2
 Michael Malina (argued), Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants-appellees.
 
 
 3
 Appeal from the United States District Court for the Western District of Washington.
 
 
 4
 Before: CHAMBERS and HUFSTEDLER, Circuit Judges, and RENFREW,* District Judge.
 
 RENFREW, District Judge:
 
 5
 Plaintiff-appellant Thornhill Publishing Company, Inc. ("Thornhill"), brought this antitrust suit against defendant-appellee General Telephone & Electronics Corporation ("GTE") and its wholly owned subsidiaries, General Telephone Company of the Northwest, Inc. ("Northwest"), and General Telephone Directory Company ("Directory"), alleging violations of Sections 1 and 2 of the Sherman Act and Section 7 of the Clayton Act. Thornhill, a publisher and distributor of telephone directories, alleged that appellees combined and conspired to unreasonably restrain and to monopolize trade in the publication and sale of telephone directories and in the sale of advertising space and linage in telephone directories. Thornhill claimed that appellees refused to sell, lease, or otherwise make available to Thornhill the names, addresses, and phone numbers of Northwest's telephone customers. The complaint also charged that appellees made false representations concerning appellant's business, confiscated appellant's telephone directories, and threatened certain financial institutions with withdrawal of patronage or litigation if they continued doing business with Thornhill. Finally, Thornhill alleged that as part of this combination and conspiracy appellees instituted a lawsuit against Thornhill. In that lawsuit, filed in the Western District of Washington in 1970, Northwest obtained a judgment against Thornhill for infringement of Northwest's copyright on certain of its telephone directories and was awarded injunctive relief and damages. Thornhill claims that that lawsuit and appellees' other alleged activities constitute violations of Sections 1 and 2 of the Sherman Act. Thornhill also contends that GTE's acquisition of Directory, prior to 1970, had the effect of eliminating competition among those seeking to acquire the names, addresses and telephone numbers of customers of GTE and Northwest, since GTE allegedly agreed with Directory not to disclose that information. Thornhill therefore claims that the acquisition violated Section 7 of the Clayton Act.
 
 
 6
 Appellees moved for summary judgment under Rule 56 on two grounds. First, appellees argued that Thornhill's antitrust claims were barred by principles of Res judicata because Thornhill should have raised them as compulsory counterclaims in the prior copyright infringement suit. Second, they contended that the acts complained of were outside the jurisdictional reach of the Sherman Act, as Thornhill's telephone directory business is not in and does not substantially affect interstate commerce. The district court ruled in favor of appellees on both grounds and dismissed the suit. This appeal followed. We affirm the district court's ruling on the interstate commerce issue and therefore do not reach the compulsory counterclaim issue.
 
 I. PROCEDURAL POSTURE OF THE CASE
 
 7
 Appellees moved for summary judgment under Rule 56, asserting that "the alleged conduct claimed to have violated the antitrust laws affected (if at all) purely Intrastate activities and is thus beyond the jurisdictional reach of the Sherman Act," and asked that the "motion for summary judgment be granted dismissing the complaint in all respects." The trial court granted the motion and dismissed the complaint with prejudice.[1]
 
 
 8
 The Sherman Act prohibits every contract, combination or conspiracy "in restraint of trade or commerce among the several States," 15 U.S.C. § 1, and also prohibits monopolizing "any part of the trade or commerce among the several States." 15 U.S.C. § 2. The requirement that the restraint of trade be a restraint on interstate commerce is generally referred to as a prerequisite for federal jurisdiction. Many courts have dismissed Sherman Act claims for lack of subject matter jurisdiction where the required nexus with interstate commerce was lacking.[2] Other courts have considered the interstate commerce issue in the context of motions going to the merits of the case either motions for dismissal for failure to state a claim for relief under Rule 12(b)(6),[3] or motions for summary judgment under Rule 56.[4] In many cases the defendants move for dismissal under both Rule 12(b)(1) and Rule 12(b)(6).[5]
 
 
 9
 In this case appellees moved for summary judgment under Rule 56, thus seeking a judgment on the merits,[6] yet their motion was phrased in terms of an attack on the court's jurisdiction. In ruling on appellee's motion, the trial court apparently applied the standards applicable to a motion for summary judgment.
 
 
 10
 We affirm the trial court's ruling. We find that the material facts relating to the interstate commerce issue are not in dispute and that the undisputed facts establish that the nexus with interstate commerce required by the Sherman Act is not present in this case.
 
 
 11
 Since the material facts are not in dispute, we need not decide whether the trial court was required to apply summary judgment standards in ruling on appellees' motion or whether the court could properly have considered this a purely jurisdictional issue and therefore could have treated the motion as a motion to dismiss for lack of jurisdiction under Rule 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a "speaking motion" attacking the existence of subject matter jurisdiction in fact. Land v. Dollar, 330 U.S. 731, 735 & n.4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 890-892 (3 Cir. 1977); Exchange Nat'l Bank v. Touche Ross & Co., 544 F.2d 1126, 1130-1131 (2 Cir. 1976). Where the jurisdictional issue is separable from the merits of the case, the judge may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary. Berardinelli v. Castle & Cooke, Inc., 587 F.2d 37 (9 Cir. 1978); Mortensen v. First Fed. Sav. & Loan Ass'n, supra, 549 F.2d at 891; Sinclair v. Spatocco, 452 F.2d 1213 (9 Cir. 1971), Cert. denied, 409 U.S. 886, 93 S.Ct. 102, 34 L.Ed.2d 142 (1972); Appelt v. Whitty, 286 F.2d 135 (7 Cir. 1961). The standards applicable to a Rule 12(b)(1) speaking motion differ greatly from the standards for ruling on a motion for summary judgment. Faced with a factual attack on subject matter jurisdiction,
 
 
 12
 "the trial court may proceed as it never could under Rule 12(b)(6) or Fed.R.Civ.P. 56. * * * (N)o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." Mortensen v. First Fed. Sav. & Loan Ass'n, supra, 549 F.2d at 891 (footnote omitted).
 
 
 13
 If the interstate commerce requirement of the Sherman Act is an element of the substantive offense as well as a jurisdictional requirement, a motion directed to the interstate commerce issue should be accorded Rule 56 treatment, for a ruling on that issue would be a ruling on the merits. Although a court considering a motion relating to jurisdiction as well as a motion on the merits generally would decide the jurisdictional issue first,[7] if the attack on jurisdiction requires the court to consider the merits of the case, the court has jurisdiction to proceed to a decision on the merits. Land v. Dollar, supra, 330 U.S. at 739, 67 S.Ct. 1009. See also Romero v. International Terminal Operating Co., 358 U.S. 354, 359, 79 S.Ct. 468, 3 L.Ed.2d 368 (1958); Bell v. Hood, 327 U.S. 678, 682-683, 66 S.Ct. 773, 90 L.Ed. 939 (1946).
 
 
 14
 In Timberlane Lumber Co. v. Bank of America, 549 F.2d 597, 602 (9 Cir. 1976), we concluded that in a Sherman Act case a motion challenging the existence of a sufficient relationship with foreign commerce should be accorded Rule 56 treatment rather than being treated as a speaking motion under Rule 12(b)(1), because the existence of a sufficient relationship with foreign commerce relates to the merits of the claim as well as to subject matter jurisdiction. This conclusion was based on the Supreme Court's statement in Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 742 n.1, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), that the interstate commerce issue is identical whether a dismissal is sought under Rule 12(b)(1) or under Rule 12(b)(6). We reasoned that since the interstate commerce element went to the merits of the claim, a dismissal should be based on a Rule 12(b)(6) motion or a summary judgment motion, rather than a Rule 12(b)(1) motion:
 
 
 15
 Although the Supreme Court in Hospital Building did not elaborate, it seems settled that, when a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiffs' substantive claim for relief, a motion to dismiss for lack of subject matter jurisdiction rather than for failure to state a claim is proper only when the allegations of the complaint are frivolous. O'Neill v. Maytag, 339 F.2d 764, 766 & n.3 (2d Cir. 1964). See Bell v. Hood, 327 U.S. 678, 682-83, 66 S.Ct. 773, 90 L.Ed. 939 (1946). " Timberlane Lumber Co. v. Bank of America, supra, 549 F.2d at 602.
 
 
 16
 Timberlane is consistent with language in several Supreme Court cases indicating that the interstate commerce requirement is tied to the merits as well as to the jurisdictional aspects of an antitrust case and therefore warrants Rule 56 treatment. In Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 203 n.19, 95 S.Ct. 392, 402, 42 L.Ed.2d 378 (1974), for example, the Supreme Court, discussing the interstate commerce requirement of the Clayton Act, stated:
 
 
 17
 "(A)ssuming that the interstate commerce requirements of §§ 3 and 7 are properly deemed issues of subject-matter jurisdiction, rather than simply necessary elements of the federal claims, * * * there is * * * an identity between the 'jurisdictional' issues and certain issues on the merits, and hence, under Land v. Dollar, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947), no objection to reserving the jurisdictional issues until a hearing on the merits. By the same token, however, there is no objection to use, in appropriate cases, of summary judgment procedure to determine whether there is a genuine issue of material fact as to the interstate commerce elements."
 
 
 18
 Moreover, the Supreme Court has consistently considered the interstate commerce issue in terms of whether the complaint alleged a sufficient nexus with interstate commerce to state a claim for relief,[8] thus addressing the merits of plaintiff's claim.
 
 
 19
 Although Timberlane apparently viewed the interstate commerce requirement as a substantive element of a Sherman Act violation, this Court has recently relied on Ninth Circuit opinions preceding Timberlane that distinguish the jurisdictional interstate commerce issue from the substantive issues. We stated in Berardinelli v. Castle & Cooke, Inc., supra, 587 F.2d at 38:
 
 
 20
 " 'The jurisdictional issue under the Sherman Act is distinct from the substantive issue of whether a given defendant's conduct was of the kind prohibited by the Act,' Gough v. Rossmoor Corp., 487 F.2d 373, 375 (9th Cir. 1973). Specifically, 'the jurisdictional question . . . is whether defendants' conduct had a sufficient relationship to interstate commerce to be subject to regulation by Congress . . . (while) the substantive issue . . . is whether defendants participated in anti-competitive conduct of the kind encompassed within the statutory terms "restraint of trade," "monopolize," or " attempt to monopolize." ' Id. at 376."
 
 
 21
 In Berardinelli we held that the trial court could properly resolve factual disputes related to the interstate commerce issue in ruling on a Rule 12(b)(1) speaking motion to dismiss for lack of subject matter jurisdiction.[9] Our holding, however, was based on appellant's concession that the jurisdictional issue and the substantive issues were separable. We acknowledged that where the jurisdictional issue and the substantive issues are so intermeshed that the question of jurisdiction is dependent on decision of the merits,[10] a party is entitled to have the jurisdictional issue submitted to the jury, rather than having the court resolve factual issues. Berardinelli, supra, 587 F.2d at 39.
 
 
 22
 In the present case we need not decide the many complex procedural issues that arise in the context of motions concerning the interstate commerce requirement of the Sherman Act. Under the standards governing a motion for summary judgment under Rule 56, the trial court's ruling on the interstate commerce issue should be affirmed. Thus, it is unnecessary to consider whether the less rigorous standards applicable to a Rule 12(b)(1) speaking motion could properly have been applied in this case.
 
 
 23
 II. SUMMARY JUDGMENT ON THE INTERSTATE COMMERCE ISSUE
 
 A. Appellees' Motion
 
 24
 Appellees moved for summary judgment contending that no genuine issues of material fact existed with respect to the issue of interstate commerce and that on the basis of the undisputed facts the motion should be granted. The district court ruled in favor of appellees on the ground that the acts complained of were entirely intrastate and clearly did not have a substantial effect on interstate commerce. We affirm the district court's ruling.
 
 
 25
 Appellees based their motion for summary judgment on the deposition testimony of Mr. Thornhill, president and sole stockholder of the appellant corporation, and on appellant's answers to interrogatories. That testimony fully supports appellees' contention that the product market at issue in this case is a purely local market and that appellant's business was solely intrastate.
 
 
 26
 Mr. Thornhill testified at his deposition that the appellant corporation, incorporated in Olympia, Washington, in April 1969, has published and distributed two local telephone directories one for South Snohomish-North King County, Washington, issued in May 1970, and the other for Whidbey Island, Washington, issued in January 1971. These directories contained listings of Washington residents and businesses.[11] The listings were compiled within the State of Washington. Listings were obtained from a Seattle mail order company, from listings of landowners at a local courthouse, and through copying Directory's telephone directories.[12]
 
 
 27
 Since the telephone directories were distributed free of charge, appellant's revenues were generated through the sale of advertising space and linage. Mr. Thornhill testified at his deposition that the company solicited advertisements exclusively from local businesses and professional concerns. Appellant's directories were printed within the State of Washington and virtually all the supplies were purchased within the state. The directories were then distributed within the State of Washington in the communities they served.
 
 
 28
 These undisputed facts all support the conclusion that the alleged restraints of commerce were directed at a wholly intrastate market and that the alleged restraints did not have a substantial effect on interstate commerce. Appellant has not contested the facts set forth above, but has advanced a number of possible bases for a finding that the required nexus with interstate commerce exists in this case. However, appellant's factual and legal assertions are inadequate to avoid summary judgment on the interstate commerce issue.
 
 
 29
 B. The Interstate Commerce Requirement of the Sherman Act
 
 
 30
 In enacting the Sherman Act, Congress intended to exercise its power under the Commerce Clause to the maximum possible extent. United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 558, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944); Rasmussen v. American Dairy Ass'n, 472 F.2d 517, 521 (9 Cir. 1972), Cert. denied, 412 U.S. 950, 93 S.Ct. 3014, 37 L.Ed.2d 1003 (1973). The scope of the Act must be determined by the courts on a case-by-case basis:
 
 
 31
 "When Congress itself determines that particular conduct adversely affects interstate commerce, the courts defer to Congress' judgment so long as there is 'a rational basis for finding a chosen regulatory scheme necessary to the protection of commerce . . ..' Katzenbach v. McClung, 379 U.S. 294, 303-304, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964). However, under the Sherman Act, 'Congress has . . . left it to the courts to determine whether the intrastate activities have the prohibited effect on . . . (interstate) commerce . . ..' United States v. Darby, 312 U.S. 100, 120, 61 S.Ct. 451, 460, 85 L.Ed. 609 (1941). While the underlying standard remains the same, the judicial function is not that of reviewing a decision made by Congress, but rather that of determining in the first instance whether the facts permit the exercise of power under the commerce clause." Rasmussen, supra, 472 F.2d at 524 (footnote omitted).
 
 
 32
 Accord, Gulf Oil Corp. v. Copp Paving Co., supra, 419 U.S. at 197 n.12, 95 S.Ct. 392.
 
 
 33
 The test for determining whether an alleged restraint of trade is sufficiently related to interstate commerce to come within the scope of the Sherman Act was set forth in our opinion in Las Vegas Merchant Plumbers Ass'n v. United States, 210 F.2d 732, 739 n.3 (9 Cir. 1954), Cert. denied, 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645 (1954):
 
 
 34
 "A case under the antitrust laws, so far as the interstate commerce element is concerned may rest on one or both of two theories:"(1) That the acts complained of, occurred within the flow of interstate commerce. This is generally referred to as the 'in commerce' theory.
 
 
 35
 "(2) That the acts complained of, occurred wholly on the state or local level, in intrastate commerce, but substantially Affected interstate commerce."
 
 
 36
 Accord, e. g., Rasmussen, supra, 472 F.2d at 526; Sun Valley Disposal Co. v. Silver State Disposal Co., 420 F.2d 341, 343 (9 Cir. 1969). Furthermore, we held in Page v. Work, 290 F.2d 323, 330 (9 Cir. 1961):
 
 
 37
 "The test of jurisdiction is not that the acts complained of affect a business engaged in interstate commerce, but that the conduct complained of affects the interstate commerce of such business."
 
 
 38
 C. The "In Commerce Test"
 
 
 39
 In this case, undisputed facts establish that appellant is not engaged in interstate commerce and that its local telephone directories, produced and distributed within the state of Washington, were not a part of the flow of interstate commerce. Appellant's argument that the directories must be regarded as "in commerce" is based on our decision in Copp Paving Co. v. Gulf Oil Co., supra, 487 F.2d 202, Cert. denied on the Sherman Act issue, 415 U.S. 988, 94 S.Ct. 1586, 39 L.Ed.2d 885 (1974). In Copp Paving we held that
 
 
 40
 "the production of asphalt for use in interstate highways rendered the producers 'instrumentalities' of interstate commerce and placed them 'in' that commerce as a matter of law." 487 F.2d at 204.
 
 
 41
 Appellant asserts that the rationale employed in Copp Paving is applicable here because a user of one of appellant's local telephone directories would consult the directory before making a telephone call, and the telephone network is a instrumentality of interstate commerce. Unlike the plaintiff in Copp Paving, however, Thornhill does not actually produce instrumentalities of interstate commerce. Copp Paving would be far more analogous if Thornhill manufactured telephones or telephone equipment rather than a directory designed to facilitate local communication. Furthermore, we are reluctant to extend the reach of the Copp Paving decision in light of the Supreme Court's disposition of the Clayton Act interstate commerce question presented in that case. Although the Supreme Court denied certiorari on the Sherman Act interstate commerce issue, and thus did not review our holding that the producers of asphaltic concrete were "in commerce" for purposes of the Sherman Act, the Court did reject our "in commerce" theory in reviewing the Clayton Act claim. Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974).
 
 
 42
 We find that Copp Paving Co. is distinguishable from the instant case and that the facts presented here would not support a jury finding that the alleged restraints were directed at a product in the flow of interstate commerce.[13]
 
 D. The "Affecting Commerce" Test
 
 43
 Alternatively, appellant contends that the appellees' alleged acts substantially affected interstate commerce. Even a wholly local business restraint is covered by the Sherman Act if the restraint substantially and adversely affects interstate commerce. Hospital Bldg. Co. v. Trustees of Rex Hospital, supra, 425 U.S. at 743, 96 S.Ct. 1848. Appellant's complaint alleges in conclusory terms that appellant engages in interstate commerce and that appellees have monopolized and unreasonably restrained interstate commerce. However, the facts set forth in the deposition of Mr. Thornhill, submitted in support of appellees' motion for summary judgment, refute these allegations of the complaint and have not been adequately countered by appellant. Rule 56(e) of the Federal Rules of Civil Procedure provides in pertinent part:
 
 
 44
 "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."
 
 
 45
 Appellant has not met the burden imposed by Rule 56(e). In an attempt to avoid summary judgment, appellant submitted conclusory and speculative affidavits that fail to set forth specific facts in support of appellant's "substantial effect on interstate commerce" theory. Appellant relies on an affidavit submitted by Mr. Thornhill, in which Mr. Thornhill states that although appellant's directories carried local advertising, "it was common knowledge throughout the directory industry that local dealers in many instances received advertising subsidies from national manufacturers." However, Mr. Thornhill failed to set forth any specific facts within his personal knowledge in support of this assertion. As the Court of Appeals for the Second Circuit has stated:
 
 
 46
 "If, indeed, evidence was available to underpin (the) conclusory statement, Rule 56 required (the party opposing summary judgment) to come forward with it." Donnelly v. Guion, 467 F.2d 290, 293 (2d Cir. 1972).
 
 
 47
 Mr. Thornhill's affidavit also states that the Seattle mail order firm that supplied listings for the directories "to the best of my knowledge" is engaged in interstate business. Appellant argues that this interstate business could have been affected by the appellees' acts. No specific facts are presented in support of this theory, however. Mr. Thornhill also alleges that appellant purchased some manila folders and format sheets out of state, yet he stated at his deposition that he did not have "the remotest idea" of the cost of these supplies. His deposition testimony establishes that most of the company's supplies were purchased in the state of Washington.[14] Finally, appellant argues that because of appellees' alleged harassment, many local businessmen were dissuaded from purchasing advertising in appellant's directories and that appellant therefore was forced to seek additional local financing, one condition of the financing being that appellant print one of the directories locally rather than out of state, as previously planned. It is extremely doubtful that this sequence of events, if proved, could be shown to have produced a substantial and adverse effect on interstate commerce. At any rate, appellant failed to substantiate this theory with specific facts. Appellant was unable to name any of the allegedly harassed businessmen and did not specify the dollar amount of the interstate commerce purportedly involved.[15]
 
 
 48
 Appellant clearly has not met the burden of opposing the factual showing made by appellees in support of their motion for summary judgment. Appellees, relying on Mr. Thornhill's deposition testimony, established the purely local nature of appellant's business. Appellant failed to rebut appellees' showing that no genuine issue of material fact concerning the interstate commerce requirement remained for trial.
 
 
 49
 On these facts, summary judgment for appellees was proper, as the facts are insufficient to support a jury finding that the activities complained of were either in the flow of interstate commerce or substantially affected interstate commerce. Although the Constitutional reach of the Commerce Clause is extremely broad, it is not limitless.
 
 
 50
 "(T)here must be some limit on the intrusiveness of Sherman Act regulation. Since every enterprise, however localized, inevitably has some effect, however remote, on the flow of commerce among the states, some 'localness,' 'remoteness,' or 'de minimis' factor must intervene or federal regulation is boundless." Rasmussen v. American Dairy Ass'n, supra, 472 F.2d at 526.
 
 
 51
 The limits are evident in those cases holding that a Sherman Act complaint failed to state a cause of action because the facts alleged did not satisfy the interstate commerce requirement,[16] in those cases in which summary judgment or dismissal for want of jurisdiction has been granted on the issue of interstate commerce,[17] or where a judgment n. o. v. was granted on the ground that there was insufficient evidence to support a jury's finding that the interstate commerce requirement had been met.[18]
 
 
 52
 A determination of whether the interstate commerce requirement of the Sherman Act has been met requires an evaluation of the particular facts presented in each case. The cases do not provide easily applicable standards for determining whether the necessary relationship with interstate commerce exists. See Rasmussen, supra, 472 F.2d at 527, n.20. We note, however, that the required nexus with interstate commerce has been found lacking in similar cases involving an intrastate market. In Page v. Work, supra, 290 F.2d 323, for example, we held that the alleged restraint of the sale of legal advertising in Los Angeles County was directed solely at a local market and that the alleged monopoly of this market had no substantial effect on interstate commerce. Similarly, in Yellow Cab Co. v. Cab Employers, Local 881, supra, 457 F.2d 1032, we found that a cab company's business was almost wholly intrastate and that a motion for summary judgment on the interstate commerce issue had been properly granted, as the company was not "in commerce" and there was no factual basis to support an "affecting commerce" theory.
 
 
 53
 We find it unnecessary to catalog the facts of each case cited by the parties, as there emerges no "bright line" dividing the cases in which the required nexus with interstate commerce has been found and those in which it has not. In Rasmussen, supra, 472 F.2d at 526, we noted this difficulty yet emphasized that some line must be drawn "or federal regulation is boundless." To find on the facts presented in this case that the interstate commerce requirement of the Sherman Act has been met would effectively eliminate that requirement from the Act.
 
 
 54
 Accordingly, we affirm the district court's grant of summary judgment on the ground that the conduct complained of is beyond the scope of the Sherman Act.
 
 
 
 *
 Honorable Charles B. Renfrew, United States District Judge, Northern District of California, sitting by designation
 
 
 [1]
 The trial court concluded that the conduct complained of was beyond the jurisdictional reach of the antitrust laws. The court dismissed the entire suit, thus dismissing the Clayton § 7 as well as the Sherman Act claims. In its briefs on appeal, appellant only addressed the Sherman Act ruling, presumably because the jurisdictional reach of the Clayton Act is more limited than that of the Sherman Act. See United States v. American Bldg. Maintenance Industries, 422 U.S. 271, 283, 95 S.Ct. 2150, 45 L.Ed.2d 177 (1975). Our opinion only considers the jurisdictional issue raised by appellant on appeal
 
 
 [2]
 See, e. g., Berardinelli v. Castle & Cooke, Inc., 587 F.2d 37 (9 Cir. 1978); Save Our Cemeteries, Inc. v. Archdiocese of New Orleans, Inc., 568 F.2d 1074 (5 Cir. 1978), U.S. Supreme Court Cert. denied, --- U.S. ----, 99 S.Ct. 120, 58 L.Ed.2d 133 (1978), Diversified Brokerage Services, Inc. v. Greater Des Moines Board of Realtors, 521 F.2d 1343 (8 Cir. 1975); Rosemound Sand & Gravel Co. v. Lambert Sand & Gravel Co., 469 F.2d 416 (5 Cir. 1972)
 
 
 [3]
 See, e. g., Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976); United States v. Employing Plasterers Ass'n, 347 U.S. 186, 74 S.Ct. 452, 456, 98 L.Ed. 618 (1954); Mandeville Farms v. Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328 (1948); United States v. Yellow Cab Co., 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947); Dreibus v. Wilson, 529 F.2d 170 (9 Cir. 1975); Lieberthal v. North Country Lanes, Inc., 332 F.2d 269 (2 Cir. 1964)
 
 
 [4]
 See, e. g., Yellow Cab Co. v. Cab Employers, Local 881, 457 F.2d 1032 (9 Cir. 1972); Sun Valley Disposal Co. v. Silver State Disposal Co., 420 F.2d 341 (9 Cir. 1969); Page v. Work, 290 F.2d 323 (9 Cir. 1961), Cert. denied, 368 U.S. 875, 82 S.Ct. 121, 7 L.Ed.2d 76 (1961). These decisions, however, refer to the summary judgment motions as raising issues of jurisdiction
 
 
 [5]
 See, e. g., Hospital Bldg. Co. v. Trustees of Rex Hospital, 511 F.2d 678, 680 (4 Cir. 1975); Bryan v. Stillwater Board of Realtors, 578 F.2d 1319, 1320 (10 Cir. 1977); Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 888 (3 Cir. 1977)
 
 
 [6]
 See O'Donnell v. Wien Air Alaska, Inc., 551 F.2d 1141, 1145 n.4 (9 Cir. 1977)
 
 
 [7]
 See Mortensen v. First Fed. Sav. & Loan Ass'n, supra, 549 F.2d at 895 n.22
 
 
 [8]
 See, e. g., Hospital Bldg. Co. v. Trustees of Rex Hospital, supra, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338; United States v. Employing Plasterers Ass'n, supra, 347 U.S. 186, 74 S.Ct. 452, 456, 98 L.Ed. 618; Mandeville Farms v. Sugar Co., supra, 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328; United States v. Yellow Cab Co., supra, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010
 
 
 [9]
 But see Washington State Bowling Prop. Ass'n v. Pacific Lanes, Inc., 356 F.2d 371, 379 (9 Cir. 1966), Cert. denied, 384 U.S. 963, 86 S.Ct. 1590, 16 L.Ed.2d 674 (1966); Marks Food Corp. v. Barbara Ann Baking Co., 274 F.2d 934, 936 (9 Cir. 1960)
 
 
 [10]
 In McBeath v. Inter-American Citizens for Decency Committee, 374 F.2d 359 (5 Cir. 1967), Cert. denied, 389 U.S. 896, 88 S.Ct. 216, 19 L.Ed.2d 214 (1967), the Court of Appeals for the Fifth Circuit concluded that the jurisdictional interstate commerce issue was inseparable from the merits of the case and therefore held that the district court had erred in dismissing the case for want of jurisdiction. In Berardinelli, supra, 587 F.2d at 39, we distinguished McBeath, relying on plaintiff's concession that the jurisdictional and substantive issues were not intertwined. Yet if the interstate commerce issue were to be viewed as a substantive element of the offense, the jurisdictional issue would necessarily be tied to the merits of the case
 McBeath was cited approvingly by Justice Douglas in his dissent in Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, at 212-214 n.9, 95 S.Ct. 392, 42 L.Ed.2d 378 (1974). The majority agreed with Justice Douglas that there is "an identity between the 'jurisdictional' issues and certain issues on the merits," if in fact the interstate commerce requirements of Clayton §§ 3 and 7 "are properly deemed issues of subject-matter jurisdiction, rather than simply necessary elements of the federal claims." 419 U.S. at 203 n.19, 95 S.Ct. at 402.
 
 
 [11]
 Mr. Thornhill testified at his deposition that "like any directory there could be some Oregon listings or something but 99 percent of it is Washington."
 
 
 [12]
 Mr. Thornhill testified that after "waxing" listings from Directory's telephone books, his employees called the numbers listed to verify each listing
 
 
 [13]
 Appellant's primary argument in support of its "in commerce" theory is that the case is analogous to Copp Paving. Appellant also relies on Mr. Thornhill's affidavit as raising genuine issues of material fact regarding Thornhill's nexus with interstate commerce. The affidavit is discussed below in connection with the "affecting commerce" theory. Mr. Thornhill's affidavit was not adequate to establish that genuine issues of fact existed with respect to either the "in commerce" theory or the "affecting commerce" theory
 As discussed below, the affidavit included an assertion that it was "common knowledge" that local businesses often receive advertising subsidies from national manufacturers. Appellant therefore argues that this case is indistinguishable from Greenville Publishing Co. v. Daily Reflector, Inc., 496 F.2d 391 (4 Cir. 1974). In that case, however, the "in commerce" theory was based on the uncontroverted fact that the defendant newspaper did carry national advertising.
 
 
 [14]
 Compare Rasmussen v. American Dairy Ass'n, supra, 472 F.2d at 525, where the local product at issue "in economic terms * * * consist(ed) almost wholly of the ingredients that move in interstate commerce." The case before us is also distinguishable from Hospital Bldg. Co. v. Trustees of Rex Hospital, supra, 425 U.S. at 741, 96 S.Ct. at 1851, where plaintiff's allegation that it "purchase(d) a substantial portion up to 80% Of its medicines and supplies from out-of-state sellers" and in a single year had spent $112,000 on such items was considered sufficient to withstand a Rule 12(b)(6) motion
 
 
 [15]
 This is not a case where appellant was not afforded sufficient time for discovery. The motion for summary judgment was made nearly two years after the complaint was filed in this case
 
 
 [16]
 See, e. g., United States v. Yellow Cab Co., supra, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010; Dreibus v. Wilson, supra, 529 F.2d 170; Lieberthal v. North Country Lanes, Inc., supra, 332 F.2d 269
 
 
 [17]
 See cases cited at note 2, Supra, and note 4, Supra
 
 
 [18]
 See, e. g., Ford Wholesale Co. v. Fibreboard Paper Products Corp., 493 F.2d 1204 (9 Cir. 1974), Cert. denied, 419 U.S. 876, 95 S.Ct. 138, 42 L.Ed.2d 115 (1974)