**UNITED STATES of America, Plaintiff,**

v.

**REAL PROPERTY LOCATED AT 5208 LOS FRANCISCOS WAY, LOS ANGELES, CALIFORNIA, APN:5588-021-018 Including all Appurtenances and Improvements Thereto, Defendant.**

**Levon Markarian and Eva Markarian, Claimants.**

**No. CIV. S-01-1956FCDJFM.**

United States District Court, E.D. California.

March 6, 2003.

Courtney J. Linn, Assistant United States Attorney, Sacramento, CA, for Plaintiff.

Rose A. PeBenito, Buchalter Nemer Fields and Younger, Los Angeles, CA, Graham H. Kidner, Pro Hac Vice, Federal Home Loan Mortgage Corporation, McLean, VA, for Defendant/Claimants.

*MODIFIED MEMORANDUM AND ORDER* [1]

DAMRELL, District Judge.

This matter is before the court on plaintiff United States of America's (the "Government") motion for summary judgment

---

**1.** The court modifies its Memorandum and Order of February 5, 2003 only to correct a typographical error in footnote 3 of that order, appearing as footnote 4 herein. No substantive changes are intended.

on the basis that the sole remaining claimants in this action, Levon Markarian and Eva Markarian (the "claimants"), lack standing to contest the civil forfeiture of the defendant real property at issue in this case. For the reasons set forth below, the Government's motion for summary judgment is GRANTED.[2]

## FACTUAL BACKGROUND

In 1995, Anahit Margarian ("Margarian") and William Cherkezian ("Cherkezian") entered into a business partnership by the name of Plaza Medical Supplies, Inc. ("Plaza Medical Supplies" or the "company"). Plaza Medical Supplies was incorporated in the State of California on November 20, 1995, and was located in Los Angeles. Statement of Undisputed Facts in Supp. of Pl.'s Mot. for Summ. J. ("UF"), filed July 24, 2002, UF 1, 4. Margarian was the President of the company, in which she and Cherkezian both held a half-ownership interest. UF 2, 3.

Plaza Medical Supplies was purportedly in the business of providing wholesale medical supplies and equipment. UF 5. On April 26, 1996, it became a Medi–Cal provider under the name of Cherkezian. UF 6. During the period between September 1997 and January 1998, Plaza Medical Supplies billed Medi–Cal for more supplies than it actually purchased and distributed. UF 7. As described by Cherkezian, the scheme involved contacting medical wholesalers who agreed to provide fictitious invoices, which Cherkezian and Margarian then used to justify the company's expenses to Medi–Cal. UF 8.

On or about January 30, 1998, the State Controller's Office notified Cherkezian and Margarian by letter sent to Plaza Medical Supplies that an audit had revealed the company had overbilled the Medi–Cal program in the amount of $327,297. UF 9. The State Controller's Office requested repayment in that amount to the California Department of Health Services. UF 10. However, rather than repaying, Margarian and Cherkezian hired numerous lawyers to handle the overbilling problem. UF 12, 13.

On or about March 9, 1998, Margarian purchased the defendant real property located at 5208 Los Franciscos Way in Los Angeles for $500,000, submitting a down payment in the amount of $300,000. UF 16. During the course of the criminal sentencing proceeding following Margarian's conviction of certain health care fraud charges in June 2001, Margarian's counsel represented to the court that at least some of the money used to fund the purchase of the defendant real property likely derived from the proceeds of the Plaza Medical Supplies health care fraud scheme. UF 17; Request for Judicial Notice, filed July 24, 2002, at Ex. C (June 4, 2001 Sentencing Transcript at 17).[3] Following the purchase, in November 1998, Magarian executed a gift deed transferring the defendant real property to her Romanian parents, claimants Levon and Eva Markarian. UF 18.

A hearing on Plaza Medical Supplies' Medi–Cal overbilling issue was scheduled for January 1999. UF 14. However, Margarian's attorney at that time advised her that the hearing was canceled due to an ongoing Federal Bureau of Investigation ("FBI") probe of Plaza Medical Supplies. UF 14, 15. Soon thereafter, in March 1999, Margarian recorded the gift deed transferring defendant real property to claimants. UF 18.

---

2. Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. *See* E.D. Cal. L.R. 78–230(h).

3. The Government's Request for Judicial Notice, filed July 24, 2002, is hereby GRANTED.

Margarian continued to hold herself out as the owner of defendant real property even after she gift deeded it to claimants in March 1999. For example, Margarian sent a letter to the home owner's association of the subdivision in which defendant real property is located in June 2000, in which she made references to "my yard," "my property," referred to herself directly as the owner of the defendant real property in the text of the letter, and included the title "Property Owner" following her signature. UF 20. She also continued to pay fees to the home owner's association with funds taken from her personal bank account. UF 26. Finally, the records of the bank that holds the first deed of trust on defendant real property continue to indicate that Margarian is the property owner, and reflect no deed of the property to a third party. UF 24–25.

## PROCEDURAL BACKGROUND

Margarian was charged with health care fraud in violation of 18 U.S.C. § 1347 and aiding and abetting in violation of 18 U.S.C. § 2 by criminal information filed in the United States District Court for the Eastern District of California on April 19, 1999. UF 21. A superceding indictment was filed on May 28, 1999 charging the same violations. UF 21.

Margarian was tried by jury and found guilty of all charges in February 2001, and was sentenced on June 4, 2001. At her sentencing hearing, Margarian's counsel conceded that some of the money used to pay the down payment on the defendant real property likely came from the Medi–Cal fraud proceeds. UF 27. In addition, prior to imposing sentence upon Margarian, this court found that "[t]he timing of that transfer ... was an effort on the defendant's part to conceal assets and to remove them from the reach of the Government, and that was clearly wrong, clearly wrong with respect to the failure to acknowledge her wrongdoing." UF 23.

Thereafter, the court sentenced Margarian to 41 months imprisonment, and ordered $850,000 in restitution. UF 22. The court of appeals recently affirmed Margarian's conviction. UF 22.

In the present civil forfeiture action, filed on October 22, 2001, the Government seeks to forfeit the defendant real property on the basis that it was acquired with funds traceable to the proceeds of fraud, and that the transfer of the property was intended to conceal and disguise fraud proceeds. *See* 18 U.S.C. §§ 981(a)(1)(A) & (C); 18 U.S.C. § 1956(a)(1)(B)(i). The complaint in this action sets forth the same fraud allegations of which the jury found Margarian guilty in the criminal proceedings. After the filing of the forfeiture complaint, the court issued an arrest warrant for the defendant real property. Claimants Levon and Eva Markarian thereafter timely filed a claim in which they asserted an ownership interest in the defendant real property. The Government reached a settlement with the other lienholders that filed claims. Publication and service have been completed, and the time for filing claims has now expired.

The Government filed the motion for summary judgment presently before the court on July 24, 2002. The hearing on the motion was thereafter continued to January 31, 2003. No opposition to the Government's motion for summary judgment has been filed by claimants to date.

## STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal

purposes of the rule is to dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). If the moving party does not bear the burden of proof at trial, he or she may discharge his burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. .2548. Once the moving party meets the requirements of Rule 56 by showing there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505.

In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. *See T.W. Elec. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348; 89 L.Ed.2d 538 (1986)). The evidence presented by the parties must be admissible. Fed. R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. City of Niagara Falls,* 754 F.2d 49, 57 (2d Cir.

1985); *Thornhill Publ'g Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979).

## ANALYSIS

### A. Standing

The basis for the Government's motion for summary judgment is that claimants lack Article III standing to contest this civil forfeiture action. In order to establish that they have standing, claimants must demonstrate an ownership interest in the property subject to forfeiture. *United States v. Ranch Located in Young, Arizona,* 50 F.3d 630, 632 (9th Cir.1995). Ownership of property is generally determined by state law. *See United States v. One 1973 Rolls Royce,* 43 F.3d 794, 805 n. 8 (3d Cir.1994). Because this action concerns real property located in California, federal choice of law requires that the court apply California fraudulent transfer law. *See In re Lindsay,* 59 F.3d 942, 948 (9th Cir.1995). Thus, in this case, California's Uniform Fraudulent Transfer Act of 1986 ("UFTA") is applicable. Finally, where ownership is obtained through a transfer that violates applicable state fraudulent transfer laws, the claimant lacks standing. *See Ranch Located in Young, Arizona,* 50 F.3d at 632.

### 1. Uniform Fraudulent Transfer Act

Under California's UFTA, a transfer is fraudulent if the debtor made the transfer or incurred the obligation with the actual intent to hinder, delay, or defraud any creditor. Cal. Civ.Code § 3439.04(a). The Legislative Committee Comment to the UFTA states that in determining actual intent to hinder, delay, or defraud creditors of a debtor, courts look to certain "badges of fraud," which include:

(a) Whether the transfer or obligation was to an insider.

(b) Whether the debtor had retained possession or control of the property transferred after the transfer.

(c) Whether the transfer or obligation was disclosed or concealed.

(d) Whether the debtor was sued or threatened with suit before the transfer was made or obligation was incurred ...

.     .     .     .     .

(h) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred

Cal. Civ.Code § 3439.04, Legislative Committee Comment—Assembly, 1986 Addition (citations omitted).

The Legislative Committee Comment to California Civil Code section 3439.04(a) states that the presence of one or more badges of fraud does not create a presumption of fraud. *Id.* However, it may serve as evidence from which an inference of fraudulent intent may be drawn. *See id.* Intent to defraud in UFTA cases may be decided as a matter of law. *In re Matter of Hinsley*, 201 F.3d 638, 643 (5th Cir.2000). In addition, "[a] party's self-serving and unsupported claim that she lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud." *Id.*

In this case, Margarian transferred the defendant real property to her parents without any consideration. Thus, the transfer was to an insider (badge (a)), and the value of the consideration received was not reasonably equivalent to the value of the asset transferred (badge (h)). *See In re Serrato*, 214 B.R. 219, 229–30 (Bkrtcy. N.D.Cal.1997) ("The relationship of parent and child, when coupled with other suspicious circumstances, gives rise to an inference of fraud."). In addition, Margarian retained control and possession of the property after the transfer, as is evidenced

by the fact that she continued to pay home owner's fees, and sent a letter to the home owner's association claiming an ownership interest in the property following her gift deed to claimants (badge (b)). *Id.* at 230. Nor was the transfer disclosed, as it appears that neither the home owner's association nor the bank holding the first deed of trust on the property were aware of the transfer to claimants (badge (c)). Finally, at the time that the transfer took place, Margarian was aware that the State Controller's Office was seeking remittance of $327,297 to the California Department of Health Services due to Medi–Cal overbillings (badge (d)). In addition, Margarian became aware that the FBI was conducting an investigation into her business between the time that she made the transfer to claimants and the time she recorded the transfer.

Thus, the Government has set forth facts to support the existence of numerous badges of fraud under California Civil Code section 3439.04(a). No evidence has been submitted to contradict these facts. In addition to these badges of fraud, in sentencing Margarian following her criminal conviction, the court found that "[t]he timing of that transfer ... was an effort on the defendant's part to conceal assets and to remove them from the reach of the Government ...." *See* Request for Judicial Notice, filed July 24, 2002, at Ex. C (June 4, 2001 Sentencing Transcript at 25). In light of that finding as well as the strong evidence establishing the existence of numerous badges of fraud, the court finds that the defendant real property was transferred with the actual intent to "hinder, delay, or defraud" the Government in violation of California Civil Code section 3439.04(a). Accordingly, the transfer was voidable and claimants Eva and Levon Markarian lack standing to contest this

civil forfeiture action.[4]

## CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment is GRANTED. The Government shall lodge a proposed Final Judgment of Forfeiture within ten days of the date of this order.

IT IS SO ORDERED.

---

4. Because the court grants the Government's motion for summary judgment on the merits, it does not address the Government's arguments contained in sections (A)(1) and (B) of its moving brief.