**UNITED STATES of America, Plaintiff–Appellee,**

Levon Markarian; Eva M. Markarian, Claimants–Appellants,

and

Federal Home Mortgage Loan Corporation; Varter Karagoz, Narik Karagoz; Citibank; Federal Savings Bank, Claimants,

v.

REAL PROPERTY LOCATED AT 5208 LOS FRANCISCOS WAY, LOS ANGELES, CALIFORNIA, APN: 5588–021–018, Including all Appurtenances and Improvements Thereto, Defendants.

No. 03–15396.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 2004.

Filed Oct. 1, 2004.

Kenneth Owen, Esq., Castro Valley, CA, for the claimants-appellants.

McGregor W. Scott, United States Attorney, and Courtney J. Linn, Assistant United States Attorney, Sacramento, CA, for the plaintiff-appellee.

Before NOONAN and CLIFTON, Circuit Judges, and FOGEL, District Judge.*

---

* The Honorable Jeremy Fogel, United States District Judge for the Northern District of California, sitting by designation.

FOGEL, District Judge.

This is an appeal from a final judgment of forfeiture in a civil forfeiture action. After the action was terminated with respect to all other claimants, the district court granted summary judgment in favor of the United States and against the only remaining claimants, Levon and Eva Markarian ("the Markarians"), concluding that the Markarians lacked Article III standing to contest the forfeiture. The district court thereafter entered a final judgment of forfeiture. The Markarians assert that the district court erred in ruling that they lacked Article III standing and in entering the final judgment of forfeiture.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the judgment.

## BACKGROUND

In 1995, Anahit Markarian ("Anahit") and William Cherkezian formed a company that purportedly was in the business of providing wholesale medical supplies and equipment. In January 1998, the California State Controller's Office notified Anahit and Cherkezian that an audit had revealed that the company had overbilled the state's Medi–Cal program by an amount in excess of $300,000. In March 1998, Anahit purchased the defendant real property located at 5208 Los Franciscos Way in Los Angeles, California for $500,000, tendering a down payment of $300,000. In November 1998, Anahit executed but did not record a gift deed transferring the defendant property to her Romanian parents, the Markarians.

In January 1999, Anahit was advised of an ongoing probe into the company by the Federal Bureau of Investigation ("FBI").

In March 1999, Anahit recorded the previously executed gift deed transferring the defendant property to the Markarians. The following month, Anahit was charged with health care fraud under 18 U.S.C. § 1347, as well as aiding and abetting under 18 U.S.C. § 2. She was tried by a jury and found guilty of both offenses in February 2001. In June 2001, she was sentenced to forty-one months imprisonment and ordered to pay $850,000 in restitution. That conviction has been affirmed.

In October 2001, the government filed the instant civil forfeiture action, seeking to forfeit the defendant property on the basis that, *inter alia*, it was acquired with funds traceable to a federal health care offense, which rendered the property subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(c) and 1956(c)(7)(F). The Markarians timely filed a claim asserting an ownership interest in the defendant property. The government reached settlement or obtained entry of default with respect to all other claimants, leaving the Markarians as the only claimants contesting the forfeiture.

In July 2002, the government moved for summary judgment on the ground that the Markarians lacked Article III standing to contest the forfeiture. Specifically, the government argued that Anahit's transfer of the property to the Markarians was fraudulent under California's Uniform Fraudulent Transfer Act ("UFTA"), Cal. Civ.Code § 3439 *et seq.*, and that the Markarians thus could not establish an ownership interest in the property sufficient to give them standing. In connection with the briefing on that motion, the government requested that the district court take judicial notice of a number of documents, including the transcript of Anahit's sentencing hearing. In November 2002, while the government's motion for summary judgment was pending, the district court issued an order permitting the Markarians' attorney to withdraw as counsel of record. In the same order, the district court set the government's motion for hearing on January 31, 2003 and ordered that any opposition to the motion be filed on or before January 17, 2003. The Markarians failed to oppose the motion,[1] and on January 28, 2003 the court vacated the hearing date and ordered the motion submitted without oral argument. The court filed its memorandum and order granting the government's motion for summary judgment on February 5, 2003[2] and entered final judgment of forfeiture on February 14, 2003.

### STANDARD OF REVIEW

■ We review *de novo* a district court's finding that a claimant lacks standing to challenge a civil forfeiture. *United States v. Real Property Known As 22249 Dolorosa St., Woodland Hills, CA,* 167 F.3d 509, 511 (9th Cir.1999).

■ We also review *de novo* a district court's grant of summary judgment. *United States v. Ranch Located in Young, AZ.,* 50 F.3d 630, 632 (9th Cir.1995). Viewing the evidence in the light most

---

1. On January 13, 2003, Anahit filed a motion for extension of time, requesting a continuance of the government's motion for summary judgment. The district court denied the motion on the ground that Anahit had failed to file a timely claim to the property and thus was precluded from appearing in the action pursuant to Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims.

2. On March 6, 2003, the district court issued a modified memorandum and order to correct a typographical error. The modified memorandum and order was published and appears as *United States v. Real Property Located at 5208 Los Franciscos Way, Los Angeles, California,* 252 F.Supp.2d 1060 (E.D.Cal.2003).

favorable to the non-moving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

## DISCUSSION

### A. The Markarians' Article III Standing

 Article III standing must be determined as a threshold matter in every federal case. *State of Nevada v. Burford,* 918 F.2d 854, 856 (9th Cir.1990). In a forfeiture action, this determination turns upon whether the claimant has a sufficient interest in the property to create a case or controversy. *United States v. One Lincoln Navigator 1998,* 328 F.3d 1011, 1013 (8th Cir.2003). The claimant's burden under Article III is not a heavy one; the claimant need demonstrate only a colorable interest in the property, for example, by showing actual possession, control, title, or financial stake. *Id.* Ownership interest is determined under the law of the state in which the interest arose—here, California. *See id.; Ranch Located in Young, AZ.,* 50 F.3d at 632.

 The district court's ruling that the Markarians lacked Article III standing

was based upon its conclusion that Anahit's transfer of the defendant property to the Markarians was fraudulent under California's UFTA.[3] In particular, the district court relied upon Cal. Civ.Code § 3439.04(a) and the Legislative Committee Comment thereto. Pursuant to these authorities, a transfer is fraudulent if it is made "[w]ith actual intent to hinder, delay, or defraud" any creditor of the transferor. Cal. Civ.Code § 3439.04(a). The Comment provides that while the presence of certain "badges of fraud" does not create a presumption of fraud, it does constitute evidence from which an inference of fraudulent intent may be drawn.[4] Cal. Civ.Code § 3439.04, cmt. 5 (1986).

The badges of fraud listed by the Comment include: (a) whether the transfer or obligation was to an insider; (b) whether the debtor retained possession or control of the property transferred after the transfer; (c) whether the transfer or obligation was disclosed or concealed; (d) whether the debtor was sued or threatened with suit before the transfer was made or obligation was incurred; (e) whether the transfer was of substantially all the debtor's assets; (f) whether the debtor has absconded; (g) whether the

---

**3.** The Markarians assert that the district court erred in applying California's UFTA in order to determine whether they had an ownership interest in the defendant property. Specifically, they argue that the innocent owner defense codified at 18 U.S.C. § 983(d) has eliminated the necessity to rely upon state law. The Markarians also assert that the district court "put the cart before the horse" by requiring them to establish their innocent owner defense before requiring the government to establish by a preponderance of the evidence that the defendant property was subject to forfeiture. The Markarians are confusing two separate inquiries: (1) whether a claimant has a sufficient ownership interest in the defendant property to confer Article III standing and (2) whether a claimant is an "innocent owner" as defined under 18 U.S.C. § 983(d). *See One Lincoln Navigator,* 328 F.3d at 1014

(distinguishing between these two inquiries). The district court addressed only the former question, and properly referred to state law in doing so. The Markarians have not cited any authority holding that the innocent owner defense was intended to, or did, change the manner in which ownership interest is analyzed for purposes of Article III standing.

**4.** Section 3439.04 has been amended, effective January 1, 2005, to include in the text of the statute the badges of fraud listed in the Comment and relied upon by the district court. 2004 Cal. Legis. Serv. ch. 50, § 1 (S.B.1408) (West); Cal. Gov't Code § 9600(a) (setting forth the general rule that "a statute enacted at a regular session shall go into effect on January 1 next following a 90-day period from the date of enactment of the statute").

debtor removed or concealed assets; (h) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (i) whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (j) whether the transfer occurred shortly before or shortly after a substantial debt was incurred; (k) whether the debtor transferred the essential assets of the business to a lienor who then transferred the assets to an insider of the debtor. *Id.*

The district court concluded that the government presented substantial evidence to support the existence of numerous badges of fraud, citing the following facts: the transfer of the defendant property was to an insider; the value of the consideration received was not reasonably equivalent to the value of the asset transferred; Anahit retained control and possession of the defendant property after the transfer, as evidenced by the fact that she continued to pay homeowner's association fees and otherwise held herself out as the owner; the transfer was not disclosed to the homeowner's association or the bank holding the first deed of trust on the property; at the time the transfer took place Anahit knew the State Controller's Office was seeking remittance of more than $300,000 in overbillings; and at the time the transfer was recorded Anahit was aware that the FBI was investigating her company. The court also cited the transcript of Anahit's sentencing hearing, during which the court found expressly that the transfer was an effort on Anahit's part to conceal assets and remove them from the reach of the government.

Because the government met its initial burden of presenting evidence from which a trier of fact could conclude that the transfer to the Markarians was fraudulent, the burden shifted to the Markarians to demonstrate a triable issue of material fact as to the fraudulent nature of the transfer. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(e). The Markarians, however, failed to oppose the government's motion. Accordingly, the district court properly concluded as a matter of law that the transfer of the defendant property was fraudulent,[5] and that as a result the Markarians lacked Article III standing to contest the forfeiture action. *See Ranch Located in Young, AZ.,* 50 F.3d at 632 (applying Arizona's UFTA to conclude that claimant lacked standing to contest forfeiture action).

As noted previously, a claimant need demonstrate only a colorable interest in the defendant property in order to establish Article III standing. Had the Markarians mounted *any* opposition to the government's motion for summary judgment, it is entirely possible that they could have met their threshold burden under Article III. However, because the government presented evidence that the transfer of the property was fraudulent under state law,

**5.** The Markarians assert that the district court erred in taking judicial notice of the sentencing transcript and statements made therein. The government made a formal request for judicial notice as part of its motion for summary judgment, and the Markarians failed to object. Ordinarily, we will not review issues raised for the first time on appeal. *Pfingston v. Ronan Eng'g Co.,* 284 F.3d 999, 1004 (9th Cir.2002). Even if we were to reach the issue and were to find error, such error would be harmless because the district court's decision was based primarily upon the badges of fraud under Cal. Civ.Code § 3439.04(a). The reference to Anahit's sentencing appears at the very end of the analysis, and the transcript is mentioned almost in passing. *See 5208 Los Franciscos Way,* 252 F.Supp.2d at 1064. Even excluding the sentencing transcript, there was ample evidence in the record to support the district court's ruling.

and the Markarians failed to present any evidence whatsoever to the contrary, the district court properly concluded that there were no triable issues of material fact with respect to that issue. Having reached that conclusion, the district court had no alternative other than to find that the Markarians lacked Article III standing to contest the forfeiture.

**B. Government's "Article III Standing" And District Court's Jurisdiction**

■ Prior to the enactment of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), the burden of proof in civil forfeiture actions "tilted heavily in the government's favor." *United States v. $80,180 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir.2002). The government had the initial burden of establishing that probable cause existed to institute a forfeiture proceeding. *Id.* Once probable cause was established, the claimant could avoid forfeiture only by establishing, by a preponderance of the evidence, that the property was not subject to forfeiture. *Id.* CAFRA "transferred the burden of proof from the claimant to the government and required the government to establish forfeiture by a preponderance of the evidence rather than by the lower probable cause standard." *Id.; see also* 18 U.S.C. § 983(c)(1).

The Markarians make the novel argument that the government must meet this burden of proof in order to establish "Article III standing" to go forward with a civil forfeiture action. They contend that because the government did not first prove by a preponderance of the evidence that the defendant property was subject to forfeiture, the district court lacked subject matter jurisdiction to proceed with the action or enter a judgment therein.

The Markarians once again are conflating two separate inquiries: (1) whether the government had standing to commence and maintain a civil forfeiture action in the district court and (2) whether the government presented sufficient evidence to prevail on the merits. There can be no real dispute that the government had standing to commence the instant action. The complaint alleged that the defendant property was acquired with funds traceable to a federal health care offense—allegations that, if proved, would render the property subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(c) and 1956(c)(7)(F). While the Markarians assert that the complaint was not supported at the time of filing by evidence sufficient to meet the preponderance standard, the government is not required to prove its case simply to get in the courthouse door. It is true that CAFRA imposes upon the government the ultimate burden of establishing forfeiture by a preponderance of the evidence, but the statute also provides expressly that the government may use evidence gathered after the filing of a forfeiture complaint to meet this burden. *See* 18 U.S.C. § 983(c)(2). This provision would be meaningless if the government were required to meet the preponderance standard merely to *commence* an action.

■ The substantive merits of the government's forfeiture action—whatever they may be—cannot be raised by the Markarians in the context of the present appeal. Because the district court properly determined on the record before it that the Markarians lacked a sufficient interest in the defendant property to confer Article III standing, the Markarians had no legal basis upon which to object to the forfeiture. *See United States v. Real Property*, 135 F.3d 1312, 1317–18 (9th Cir.1998) (holding that an individual who lacked standing to contest forfeiture of property could not seek relief from default judgment); *United States v. Fifteen Thousand Five Hundred Dollars ($15,500) U.S. Currency*, 558 F.2d 1359, 1361 (9th Cir.1977)

(holding that when a claimant fails to establish the threshold requirement of standing, the claimant's challenges to the merits of the forfeiture action cannot be reached).

Accordingly, the judgment of the district court is **AFFIRMED.**