**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

          v.

$493,850.00 IN U.S. CURRENCY;
ONE 1993 FORD F-350 TRUCK,
              *Defendants.*

ROY F. BRUNO; MIGUEL CAMACHO,
          *Claimants-Appellants.*

No. 06-15225

D.C. No.
CV-03-02345-VAM

OPINION

Appeal from the United States District Court
for the District of Arizona
Virginia A. Mathis, Magistrate Judge, Presiding

Argued and Submitted
December 5, 2007—San Francisco, California

Filed March 13, 2008

Before: Jerome Farris, Robert R. Beezer, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Beezer

2393

**COUNSEL**

Richard B. Jones, Tucson, Arizona, for the claimants-appellants.

Paul K. Charlton, United States Attorney, District of Arizona and Joan G. Ruffennach and John Joseph Tuchi, Assistant United States Attorneys for the District of Arizona, Phoenix, Arizona, for the plaintiff-appellee.

**OPINION**

BEEZER, Circuit Judge:

Roy Bruno ("Bruno") and Miguel Camacho ("Camacho") (collectively, "Claimants") appeal the magistrate judge's order granting summary judgment in favor of the government in its civil forfeiture action against $493,850 in U.S. currency and one 1993 Ford F-350 truck. We affirm.

**I**

On June 3, 2003, Officer John McFarland ("McFarland") of the Arizona Highway Patrol observed a Ford truck with Florida license plates swerve over the center line on an Arizona

highway. McFarland pulled the truck over and approached the driver. As he approached, McFarland could smell the strong odor of air freshener, which, in his experience, suspects often used to cover the odor of narcotics. He questioned the driver, Camacho, and the passenger, Bruno. McFarland noted some minor inconsistencies between their statements, but issued Camacho a warning and told him that he was free to leave.

As Camacho walked back towards the truck, McFarland called Camacho back and began talking to him about drug trafficking. McFarland asked for, but did not receive, consent to search the truck. McFarland also asked for, and eventually received, consent to run a drug-sniffing dog around the truck. The dog alerted. McFarland searched the truck and found $493,850 concealed throughout the truck. He seized the truck and the currency.

On November 26, 2003, the government brought a civil complaint for forfeiture, separately naming $493,850 in U.S. currency and one 1993 Ford F-350 truck as *in rem* defendants. The government alleged that the currency was subject to forfeiture because it was furnished or intended to be furnished in exchange for a controlled substance. Alternatively, it alleged that the currency was subject to forfeiture because it was engaged in a transaction or attempted transaction involving property derived from a specified unlawful activity. The government alleged that the truck was subject to forfeiture because it was used and intended to be used to transport and facilitate the transportation, sale, receipt, possession and concealment of a controlled substance.

Bruno timely filed a claim to the currency. Camacho timely filed a claim to the truck. All parties consented to proceed before a U.S. magistrate judge.

After an evidentiary hearing, the magistrate judge held that McFarland had made a lawful investigatory stop of the truck, but that he unlawfully exceeded the scope of the investigatory

stop by calling Camacho back, questioning him and searching and seizing the truck and currency. The magistrate judge suppressed all evidence gathered after McFarland issued Camacho the warning.

The government subsequently presented the following facts in a motion for summary judgment, which the government had not previously disclosed to Claimants because of an ongoing and sealed criminal investigation: (1) a special agent with the Drug Enforcement Administration ("DEA") learned of the June 3, 2003 seizure on the day it occurred; (2) on that same day, that same agent also learned that Camacho was the subject of an ongoing DEA investigation in Miami, Florida; (3) DEA agents had observed Camacho's 1993 Ford F-350 truck during that investigation; and (4) Camacho was the subject of a separate narcotics investigation being conducted by the South Florida Money Laundering Strike Force.

The government also submitted affidavits by two witnesses cooperating in the Miami investigations, which were both signed after the complaint was filed. The witnesses testified that long before the illegal search and seizure, Camacho met separately with each of them to discuss the importation and sale of cocaine. Camacho indicated to these witnesses that he employs his family members in his cocaine operations, and that he personally transports cocaine and currency to Mexico using different types of vehicles. One of the witnesses met Bruno, a relative by marriage, during one of these meetings.

Based upon this information, the magistrate judge granted summary judgment in favor of the government. The magistrate judge found that the affidavits of the cooperating witnesses, as well as portions of the DEA agent's affidavit, were not tainted by the illegal search and seizure. The magistrate judge held that the government carried its burden in proving, by a preponderance of the evidence, a substantial connection between the *in rem* defendants and cocaine transactions. The magistrate judge further held that the Claimants had failed to

prove, by a preponderance of the evidence, that they were innocent owners because they presented nothing to rebut the government's evidence. The magistrate judge also drew a negative inference from Claimants' refusal to answer requests for admission based on the Fifth Amendment.

Claimants timely appealed. They initially moved to stay execution of the entire judgment pending appeal, but later withdrew their request as to the truck. The magistrate judge granted the motion to stay. The judgment as to the truck has been executed.

## II

We review, de novo, the denial of a motion to suppress, *United States v. Jensen*, 425 F.3d 698, 704 (9th Cir. 2005), a determination of probable cause, *United States v. $30,060 in U.S. Currency*, 39 F.3d 1039, 1041 (9th Cir. 1994), an interpretation of federal forfeiture law, *United States v. 25445 Via Dona Christa*, 138 F.3d 403, 407 (9th Cir. 1998), *amended by*, 170 F.3d 1161 (9th Cir. 1999), and an order granting summary judgment, *United States v. 5208 Los Franciscos Way*, 385 F.3d 1187, 1190 (9th Cir. 2004).

## III

The government argues that we lack jurisdiction over the truck. We agree.

In *Republic National Bank of Miami v. United States*, 506 U.S. 80 (1992), the Supreme Court held that once a court validly asserts jurisdiction in an *in rem* civil forfeiture proceeding, courts of appeals may continue to exercise jurisdiction even after the *res* is removed from the court. 506 U.S. at 88-89. There is one exception to this rule, "where the release of the property would render the judgment 'useless' because 'the thing could neither be delivered to the libellants, nor restored to the claimants.' " *Id.* at 85.

**[1]** In this case, the judgment as to the truck has been executed, so the *res* can neither be delivered nor restored to Claimants. *Id.* Claimants never entered into an agreement with the government to substitute proceeds from the sale of the truck in place of the truck for purposes of appeal. *Cf. Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852, 861-62 (9th Cir. 2005) (allowing substitution of property to abide the fate of the suit). A judgment as to the truck in this case would be useless. We lack jurisdiction over the truck.

## IV

Claimants argue that the magistrate judge should have excluded all information from the Miami investigations as fruit of the poisonous tree, because Arizona investigators would not have learned of the information but for the illegal seizure. We disagree.

**[2]** The exclusionary rule applies in civil forfeiture cases. *United States v. $191,910 in U.S. Currency*, 16 F.3d 1051, 1063 (9th Cir. 1994), *superseded on other grounds as stated in United States v. $80,180 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002). It bars the admission of evidence obtained in violation of the U.S. Constitution, as well as "fruits of the poisonous tree." *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1395 (9th Cir. 1989). "[U]nder the 'fruits of the poisonous tree' doctrine, evidence obtained subsequent to a violation of the Fourth Amendment is tainted by the illegality and is inadmissible. . . .' " *United States v. Washington*, 490 F.3d 765, 774 (9th Cir. 2007). There are three exceptions to the fruits of the poisonous tree doctrine. *Ramirez-Sandoval*, 872 F.2d at 1396.

**[3]** The independent source exception is at issue in this case. It allows admission of "evidence that is actually found by legal means through sources unrelated to the search." *Id.* "Independent source evidence is not 'fruit of the poisonous

tree' because its discovery through independent legal means does not result from the official's illegal conduct." *Id.*

**[4]** The information at issue here is not a fruit of the poisonous tree because it was not discovered subsequent to the illegal seizure, *see Washington*, 490 F.3d at 774, nor was it derived in any way from the illegal seizure, *see Ramirez-Sandoval*, 872 F.2d at 1396. The information was learned from preexisting, unrelated investigations. *See id*. It could have been, and likely was, discovered with the simple use of Camacho's name and vehicle registration, which McFarland legally obtained before the illegal search and seizure. The Miami information is admissible.

**V**

Claimants argue that the magistrate judge erred in considering the fact that the illegally seized *res* consisted of $493,850 of U.S. currency. It is unclear whether the magistrate judge considered the amount of currency in her analysis. To the extent she considered the amount of currency, we agree that such consideration was improper. To the extent she merely recognized the nature of the illegally seized property as currency, we hold that such consideration was proper.

Illegally seized property may not be "introduced as *evidence* in a forfeiture proceeding." *$191,910*, 16 F.3d at 1063 (emphasis in original). For example, in *United States v. $191,910 in U.S. Currency*, police became suspicious of the claimant after he put his bags through an airport security x-ray that revealed he was carrying a large amount of cash. *Id.* at 1054. The claimant initially told police that he was a gemologist carrying $20,000, but later told police that he was carrying $15,000. *Id.* at 1054-55. Police, believing that they had reasonable suspicion to search the claimant's bags, discovered $191,910 in the bags. *Id.* at 1055-56. The government filed a forfeiture complaint against the $191,910. *Id.* The district court held that the search was illegal, suppressed all fruits

of the search and granted the claimant's motion for summary judgment. *Id.* at 1056-57.

We affirmed. *Id.* at 1054. We held that the district court properly suppressed the amount of money as fruit of the unlawful search. *Id.* at 1059, 1065. We rejected the government's arguments that (1) the money could not be suppressed because it was the nominal defendant, *id.* at 1062-63, and (2) the exclusionary rule bars only the introduction of illegally seized materials that are not the *res*, *id.* at 1063 n.24. To have held otherwise would merely reward the government for carrying out an illegal search or seizure. *Id.* at 1065. Left only with evidence that (1) the claimant admitted to carrying either $15,000 or $20,000, (2) the claimant provided slightly inconsistent stories and (3) x-ray screening of the claimant's bags revealed that the claimant was carrying a large amount of cash, we held that the government had failed to establish, at the time it filed the complaint, probable cause to believe the money was intended for use in a drug transaction. *Id.* at 1071.

**[5]** *$191,910* makes clear that we cannot consider the amount of currency that the government illegally seized. *Id.* at 1059, 1065. The issue presented here is whether it necessarily follows that we are prohibited from considering the fact that the illegally seized property is, in fact, currency.[1] This is an issue of first impression in this Circuit.[2]

---

[1]We note that circuit courts are split on the issue whether and to what extent illegally seized property must be suppressed when it is the object of a forfeiture action. David B. Smith, *Prosecution and Def. of Forfeiture Cases* § 10.05[8] (2007) (noting that this issue may be dispositive when illegally seized *res* is currency); *see also United States v. $557,933.89 in U.S. Currency*, 287 F.3d 66, 80 (2d Cir. 2002) (undecided); *United States v. $36,634 in U.S. Currency*, 103 F.3d 1048, 1052 n.3 (1st Cir. 1997), *superseded on other grounds as stated in United States v. Lopez-Burgos*, 435 F.3d 1, 2 (1st Cir. 2006) (limited admissibility); *United States v. $12,390 in U.S. Currency*, 956 F.2d 801, 806 (8th Cir. 1992) (admissible); *United States v. $639,585 in U.S. Currency*, 955 F.2d 712, 715 n.5 (D.C. Cir. 1992) (limited admissibility).

[2]*But see $36,634*, 103 F.3d at 1052 n.3 (recognizing illegally seized *res* as currency but excluding its amount in the First Circuit).

Claimants argue that we cannot consider the fact that the illegally seized *res* consists of currency, and must instead treat the illegally seized *res* as a "featureless widget." Claimants attempt to distinguish *$191,910*, because in that case we referred to the illegally seized property as "money," but we had the benefit of an admission by the claimant that he was carrying "money." *See $191,910*, 16 F.3d at 1071-72.

Claimants read *$191,910* too broadly to exclude more than it does. We have consistently held that " '[t]he mere fact of the illegal seizure, standing alone, does not immunize the goods from forfeiture.' " *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 450 (9th Cir. 1983). An interpretation of *$191,910* requiring us to ignore the character of the illegally seized property as currency, or requiring us to consider the illegally seized property a "featureless widget," would contradict this longstanding principle by immunizing illegally seized currency from forfeiture. As noted by the magistrate judge, there would be "no way for the government to show that a 'widget' is the product of a drug transaction." The government could never place a "widget" in context or connect it with anything, let alone a drug transaction.

**[6]** We hold that when the illegally seized *res* in a civil forfeiture proceeding consists of currency, courts may consider the fact that the illegally seized *res* is currency. This holding is consistent with our holding in *$191,910* that illegally seized property may not be "introduced as *evidence* in a forfeiture proceeding." *See id.* at 1063. While courts may not introduce illegally seized currency into evidence or consider its amount, courts may recognize that illegally seized property consists of currency, if that is the case. Our view is consistent with the views of the First and D.C. Circuits. *See $36,634*, 103 F.3d at 1052 n.3; *$639,585*, 955 F.2d at 715 n.5.

## VI

Claimants argue that the admissible evidence is insufficient to establish that the government had probable cause to insti-

tute the forfeiture action as required by 19 U.S.C. section 1615. The government responds by arguing that the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") eliminated section 1615's requirement that the government show probable cause to institute the forfeiture action. We agree with Claimants that section 1615's probable cause requirement survives CAFRA, but hold that the admissible evidence is sufficient to establish that the government had probable cause to institute the forfeiture action in this case.

## A

**[7]** It is an open question whether section 1615 continues to require that the government show that it had probable cause to institute a forfeiture suit. *See* Smith, *supra*, § 11.03[6]. Before CAFRA, section 1615 required that: (1) the government show that probable cause existed to institute a forfeiture action and (2) the claimant prove, by a preponderance of the evidence, that the property was not subject to forfeiture. *5208 Los Franciscos Way*, 385 F.3d at 1193. By placing the burden of proof on the claimant, section 1615 allowed the government to seize property based on nothing more than its initial showing of probable cause in many cases. 146 Cong. Rec. H2040-01, 2051 (daily ed. Apr. 11, 2000) (statement of Rep. Jackson-Lee). Motivated by a concern that this denied citizens due process, Congress passed CAFRA in 2000. *Id.* CAFRA sets forth the burden shifting analysis for civil forfeiture actions commenced on or after August 23, 2000. 18 U.S.C. § 983.

**[8]** Although Congress never mentioned the effect of CAFRA on section 1615, *see* H.R. Rep. No. 105-358, pt. 1, at 41-42 (1997) (noting only that CAFRA codifies some existing procedures but replaces others to the extent they are inconsistent); 146 Cong. Rec. H2040-01, CAFRA supersedes certain portions of section 1615 with respect to forfeiture actions brought under 18 U.S.C. section 983: (1) it removes the burden of proof at trial from the claimant and places it on

the government and (2) it raises the government's burden of proof at trial from probable cause to institute the action to proof, by a preponderance of the evidence, that the property is subject to forfeiture. *5208 Los Franciscos Way*, 385 F.3d at 1193. The issue here is whether CAFRA also replaced section 1615's probable cause requirement, or merely added to it.

When we interpret a statute, our purpose is to discern the intent of Congress. *Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs.*, 448 F.3d 1092, 1093 (9th Cir. 2006). To discern the intent of Congress, " '[w]e look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy.' " *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 877 (9th Cir. 2001) (internal citations omitted). We will resort to legislative history when that history " 'clearly indicates that Congress meant something other than what it said.' " *Id.* (internal citations omitted). It is " 'a cardinal principle of statutory construction that repeals by implication are not favored.' " *City & County of S.F. v. Assessment App. Bd.*, 122 F.3d 1274, 1276 (9th Cir. 1997) (internal citation omitted). " 'An implied repeal may only be found if there is an irreconcilable conflict between the two federal statutes at issue.' " *Id.* (internal citation omitted).

The government argues that CAFRA's plain language eliminates the probable cause requirement by providing that "[n]o civil forfeiture complaint may be dismissed because the government lacked sufficient evidence at the time of filing." The government's citation to CAFRA is incomplete and misleading. CAFRA provides that "[n]o complaint may be dismissed on the ground that the Government did not have *adequate evidence at the time the complaint was filed to establish the forfeitability of the property*." 18 U.S.C. § 983(a)(3)(D) (emphasis added). Post-CAFRA, establishing the forfeitability of property is distinct from having probable cause to institute the forfeiture action. *See* Smith, *supra*, § 11.03[6] (arguing

that if Congress meant to eliminate the probable cause requirement, it would have stated, "[n]o complaint may be dismissed on the ground that the government did not have *probable cause at the time the complaint was filed*"). The former requirement describes the government's burden at trial to prove entitlement to the property by presenting proof, by a preponderance of the evidence, of a substantial connection between the property and the offense. 18 U.S.C. § 983(c). The latter requirement describes the government's burden to get in the courthouse door by presenting evidence that, at the time it filed the complaint, it had " 'reasonable grounds to believe that the property was related to an illegal drug transaction, supported by less than prima facie proof but more than mere suspicion.' " *United States v. One Parcel of Real Prop.*, 904 F.2d 487, 490-91 (9th Cir. 1990).

CAFRA's provision allowing the government to use evidence gathered after the filing of a complaint to establish the forfeitability of the property, 18 U.S.C. § 983(c)(2), similarly does not conflict with our holding in *$191,910* that the government may not use after-acquired evidence to establish probable cause to institute a forfeiture action, *see $191,910*, 16 F.3d at 1071. The CAFRA requirement refers to the use of after-acquired evidence in satisfying the government's burden of proof at trial to prove entitlement to the property. 18 U.S.C. § 983(c)(2). Such evidence will include evidence gathered at all stages of litigation. The requirement in *$191,910* refers to the use of after-acquired evidence in satisfying the government's lesser burden needed to get in the courthouse door. *$191,910*, 16 F.3d at 1071. Such evidence will include only evidence gathered up until the complaint was filed.

The government cites the First Circuit's opinion in *United States v. Lopez-Burgos*, 435 F.3d 1 (1st Cir. 2006), for the proposition that CAFRA eliminated section 1615's probable cause requirement. In *Lopez-Burgos*, the First Circuit held that CAFRA eliminated the government's need to plead facts

sufficient to establish probable cause to forfeit.[3] 435 F.3d at 2. At no point in its brief opinion did the First Circuit analyze whether CAFRA eliminated section 1615's requirement that the government show probable cause to institute a forfeiture action.[4] *Id.* In fact, the First Circuit was specific in noting that CAFRA increased the government's "burden of proof at trial," *id.*, rather than replaced its initial burden in filing the complaint. Although *Lopez-Burgos* described section 1615 as "statutorily superseded," "legally irrelevant" and "since repealed," *id.*, this description is inaccurate because section 1615 remains applicable to forfeiture actions brought under Titles 19 and 26, *see* 18 U.S.C. § 983(i), if not to all forfeiture actions because of the probable cause requirement.

Claimants argue that CAFRA's legislative history clearly indicates that the government is still required to show probable cause to institute a forfeiture action. CAFRA's legislative history indicates that CAFRA was intended to modify or codify certain practices, but it is devoid of any reference as to whether CAFRA eliminated the probable cause requirement. *See, e.g.*, H.R. Rep. No. 105-358, pt. 1. U.S. Representative Henry Hyde stated that "current law would be retained allowing the government to forfeit property on a showing of probable cause if the property owner elects not to challenge the forfeiture by filing a claim." *Id.* at 28. He also stated that:

> [W]hile the government may use evidence obtained after the forfeiture complaint is filed to establish the forfeitability of the property by a preponderance of the evidence, the government must still have had

---

[3]The Fourth Circuit issued a similar opinion and also limited its discussion of CAFRA to pleading requirements and the government's burden of proof at trial. *See United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir. 2002).

[4]*But see* Smith, *supra*, §11.03[6] n.56.4 (faulting First Circuit because it "appears to have accepted the government's bogus argument" that CAFRA abolishes the probable cause requirement).

> enough evidence to establish probable cause at the time of filing (or seizure, if earlier).

146 Cong. Rec. H2040-01, 2050 (statement of Rep. Hyde).

These statements are not the clear support Claimants argue them to be because they could refer to either (1) the government's burden to show probable cause to seize the property under 18 U.S.C. section 981 or (2) the government's burden to show probable cause to file its forfeiture action under 19 U.S.C. section 1615.

**[9]** Nevertheless, the coexistence of section 1615's probable cause requirement and CAFRA is consistent with the legislative intent of CAFRA. In enacting CAFRA, Congress intended to institute stronger procedural safeguards before the government could forfeit property. *See, e.g.*, 146 Cong. Rec. H2040-01, 2051 (statement of Rep. Jackson-Lee); *id.* at 2052 (statement of Rep. Barr). Requiring the government to show probable cause before instituting a forfeiture action is consistent with this intent because it provides an additional procedural protection. *See $191,910*, 16 F.3d at 1069.

**[10]** Nothing in CAFRA's plain language indicates that Congress intended to eliminate section 1615's probable cause requirement, there is no irreconcilable conflict between section 1615 and CAFRA, CAFRA's legislative history is devoid of any relevant discussion on the issue and repeals by implication are disfavored. It is also well-established that "forfeiture statutes are strictly construed against the government." *$191,910*, 16 F.3d at 1068. We hold that section 1615 continues to require that the government show probable cause to institute a forfeiture action.

**B**

**[11]** The government has probable cause to institute a forfeiture action when it has " 'reasonable grounds to believe

that the property was related to an illegal drug transaction, supported by less than prima facie proof but more than mere suspicion.' " *One Parcel of Real Prop.*, 904 F.2d at 490-91. "Probable cause to believe that the property is involved in *some* illegal activity is not enough—the government must have probable cause to believe that the property is involved in the activity subject to the specific forfeiture statute it invokes." *$191,910*, 16 F.3d at 1071. Probable cause may only be based upon information gathered before the complaint was filed. *Id.*

Prior to November 26, 2003, when the government filed the civil forfeiture complaint, McFarland legally gathered evidence that: (1) Camacho was driving a 1993 Ford F-350 truck with Florida license plates in Arizona; (2) Camacho and Bruno provided slightly inconsistent stories; (3) the truck smelled strongly of air freshener; and (4) in McFarland's experience, suspects often used strong air freshener to cover the smell of narcotics. Prior to November 26, 2003, the government also legally gathered evidence that: (1) Camacho was the subject of an ongoing DEA investigation in Miami and (2) DEA agents had observed the truck at issue during that investigation.

**[12]** McFarland's evidence, standing alone, may only raise a mere suspicion that Claimants are involved in narcotics activity. When that evidence is combined with the Miami evidence linking Camacho and his truck with cocaine traffickers, however, it is sufficient to satisfy probable cause. The evidence provides reasonable grounds to believe that Camacho, his truck and anything that could be used in furtherance of cocaine transactions—including cocaine, currency, transportation for both and persons assisting in the transportation of both—are related to or involved in illegal cocaine transactions. The government satisfied its burden under section 1615 with respect to the currency.

## VII

Claimants argue that the magistrate judge erred granting summary judgment in favor of the government. We disagree.

In a civil forfeiture proceeding, CAFRA requires the government to prove, by a preponderance of the evidence, that property is subject to forfeiture. 18 U.S.C. § 983(c); *5208 Los Franciscos Way*, 385 F.3d at 1193. "[T]he government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture." 18 U.S.C. § 983(c)(2). Once the government provides such proof, the burden shifts to the claimant to prove that he or she is an innocent owner of the property. 18 U.S.C. § 983(d).

In this case, to meet its burden, the government may rely upon the evidence supporting probable cause, as well as the following evidence: (1) the fact that Camacho was observed during a second narcotics investigation and (2) affidavits from cooperating witnesses revealing that (a) Camacho had met with them several times to discuss the importation and sale of cocaine; (b) Camacho employed his family in his cocaine business; (c) Bruno was part of Camacho's family and had met one of the cocaine dealers; and (d) Camacho would personally transport cocaine and currency to Mexico.

**[13]** This evidence is sufficient to prove, more likely than not, that Camacho, Bruno and anything that could be used in furtherance of cocaine transactions—including cocaine, currency, transportation for both and persons assisting in the transportation of both—are involved in cocaine transactions. This is true regardless of the amount of currency at issue, because the evidence connecting Camacho and Bruno with cocaine trafficking is overwhelming.

**[14]** Because the government met its burden under section 983, the burden shifted to Claimants to prove innocent owner-

ship. In other words, it became Claimants' burden to prove, by a preponderance of the evidence, that Claimants: (1) did not know of the conduct giving rise to forfeiture; or (2) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property. 18 U.S.C. § 983(d)(2)(A). Claimants provided no evidence or argument regarding innocent ownership.[5] Claimants provided no evidence regarding an alternate theory of origin for the currency. Summary judgment was proper.

## VIII

**[15]** In granting summary judgment, the magistrate judge properly considered information from the Miami investigations and the nature of the *res* as currency. To the extent the magistrate judge relied upon the amount of currency, such reliance was error but only harmless error. The admissible evidence is sufficient to establish probable cause and proof, by a preponderance of the evidence, that the currency is subject to forfeiture without regard to the amount of currency. Claimants presented no evidence of innocent ownership. The magistrate judge properly granted summary judgment in favor of the government.

**AFFIRMED**.

---

[5]The Court does not reach the issue whether the magistrate judge erred in drawing a negative inference from Claimants' refusal to answer the requests for admission based on Fifth Amendment privilege.