**UNITED STATES of America,**
**Plaintiff,**

**v.**

**$307,970.00 IN UNITED STATES CURRENCY, Defendant.**

**No. 4:12–CV–136–FL.**

United States District Court,
E.D. North Carolina,
Eastern Division.

Signed Aug. 26, 2015.

Stephen A. West, United States Attorney's Office, Raleigh, NC, for Plaintiff.

## ORDER

LOUISE W. FLANAGAN, District Judge.

This matter comes before the court on motion of claimants Cirilia Garcia, Lucia Covarrubias and Apolinar Garcia–Ancelmo for summary judgment, pursuant to Federal Rule of Civil Procedure 56, (DE 90), for the return of seized property. As discuss below, the court segregated parts of the instant motion, promoting focus at this juncture only to the extent claimants rest argument on any pre-suit probable cause requirement. In this respect, issues raised have been briefed fully. For reasons that follow, claimants' motion in this part is denied, the parties have until October 20, 2015, within which to conduct discovery, and an allotted period thereafter within which to supplement their arguments before the court takes up and decides remaining part of claimants' motion resting on the merits of the case.

## BACKGROUND

The government initiated this civil forfeiture action on July 12, 2012, by filing a complaint for forfeiture *in rem* against $307,970.00 in U.S. currency to enforce 21 U.S.C. § 881(a)(6), asserting that the defendant property was used or intended to be used in exchange for controlled substances, represented proceeds of trafficking in controlled substances, or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801 et *seq.*

On July 31, 2012, the government filed an amended complaint, (DE 4), correcting an allegation as to where the defendant funds were seized. On August 20, 2012, claimants Cirila Garcia and Lucia Covarrubias filed claims alleging ownership and possessory interest in defendant funds. (DE 7, 8). On August 29, 2012, claimant Apolinar Garcia–Ancelmo filed his claim, (DE 11), also alleging an ownership and possessory interest in the funds. A lengthy period of discovery, interspersed with various stays of the case followed.

On January 30, 2015, before the close of discovery, claimants filed the instant motion for summary judgment. (DE 90). In their motion, claimants raise two arguments. First, claimants contend the gov-

ernment improperly filed suit without probable cause to believe the defendant funds were related to a criminal undertaking. Claimants contend this portion of the motion can be resolved without further discovery because in defense of claimants' motion the government only may rely on evidence known to it at the time it filed suit. Second, claimants argue, assuming probable cause existed, the government cannot prevail on the merits.

On February 18, 2015, one week prior to the close of discovery, claimants filed a motion to stay discovery pending resolution of their motion for summary judgment. (DE 93). On February 20, 2015, the government filed a competing motion to stay, pursuant to 18 U.S.C. § 981(g).

On July 7, 2015, the court entered order granting in part claimants' motion to stay pending partial resolution of the instant motion. In its order, the court directed the government to respond to claimants' motion only to the extent claimants argue the government lacked probable cause to initiate the suit. The court denied the government's competing motion to stay as moot. On July 13, 2015, the government responded.

Concurrent with its response, the government moved the court to unseal in support of its motion the declaration of United States Drug Enforcement Administration ("DEA") agent Lance Anthony, (Anthony Decl., DE 64), already of record. This request was allowed by order entered July 14, 2015. In addition to Anthony's now unsealed declaration, the government relies on the declarations of two other DEA special agents in opposition to defendant's motion. (See Jordan Decl., DE 4–1; Trillo Decl., DE 23–2).

On July 27, 2015, claimants filed a reply in heated opposition to the government's response. (DE 116). Therein, in pertinent part, claimants oppose, at length, the government's use of the Anthony declaration. Claimants argue that the government should be precluded from relying on that declaration because during the conduct of discovery it was undisclosed, and its disclosure was not objected to, despite being responsive to claimants' discovery requests. In any case, claimants also argue that the Anthony declaration cannot support the government's attempt to establish probable cause as a matter of law because the declaration is replete with unreliable hearsay statements, made by a criminal defendant who, for purposes of sentencing, has an interest in the outcome of this case and other related cases.

### STATEMENT OF FACTS [1]

Beginning in November 2011, the DEA began a wire-tap investigation of Raul Sanchez–Correa, a non-party, believed to be involved in the sale of narcotics. (Anthony Decl. at 3). During the course of the DEA's investigation into Sanchez–Correa, numerous conversations were intercepted between him and claimant Garcia–Ancelmo, wherein the two frequently discussed multi-kilogram shipments of cocaine into North Carolina, the price required to purchase the shipments, and the potential profit to be had from reselling the cocaine. (See id. at 3–4).

Through the DEA's investigation, claimant Garcia–Ancelmo came into contact with DEA special agent Gilbert Trillo, who was working undercover as a money laundering contact, specifically targeting individuals dealing in narcotics. (Id. at 5–6). Trillo arranged to meet claimant Garcia–

---

1. Claimants have stated their objections to the facts, as presented herein, explicitly. (See Claimants' Br. in Support of Summary Judgment, DE 92 at 2 n. 1). Specifically, claim-

ants "admit these facts for the purpose of this motion only, [and do] not intent to waive any rights ... to address constitutional and evidentiary objections ... [or concerns]." (Id.).

Ancelmo in Wilson, North Carolina, on February 15, 2012, where claimant Garcia–Ancelmo was to deliver $308,000.00 in U.S. currency for Trillo to launder. (Trillo Decl. ¶ 3). However, on that date the two were unable to work out a suitable location to exchange the funds. (*See id.* ¶¶ 4–5). The next day, February 16, 2012, claimant Garcia–Ancelmo contacted Trillo and again expressed interest in exchanging the funds. (*Id.* ¶ 6). The two men arranged a meeting for approximately 5:30 PM the same day. (*Id.* ¶¶ 6–8).

The defendant funds were seized in Goldsboro, Wayne County, North Carolina, on February 16, 2012, while claimant Garcia–Ancelmo was en route to meet Trillo. (Jordan Decl., at 2; *see also* Trillo Decl. ¶¶ 9–13; Anthony Decl., at 9–10). Sergeant Matt Miller of the Wayne County Sheriff's Office observed claimant Garcia–Ancelmo swerving erratically and initiated a traffic stop. (Jordan Decl., at 2).[2] During the stop, Sergeant Miller commented to claimant Garcia–Ancelmo that he recognized him from a previous consent search of claimant Garcia–Ancelmo's residence and inquired as to whether claimant Garcia–Ancelmo had anything illegal in the vehicle. (*Id.*).[3] Claimant Garcia–Ancelmo responded in the negative and told Sergeant Miller that he could "check if [he] want[ed] to." (*Id.*). Taking claimant Garcia–Ancelmo's comments as consent, Sergeant Miller performed a search of the vehicle and discovered a trash bag filled with bundled U.S. Currency in the cargo area. (*Id.*). Claimant Garcia–Ancelmo de-

nied ownership of the money, but stated that he had been paid $1,000.00 to "deliver it" to an unnamed individual. (*Id.* at 3). Later, claimant Garcia–Ancelmo attempted to bribe Sergeant Miller, telling him to "take the money and spend it." (*Id.*). Sergeant Miller declined and ultimately seized the currency, on belief that it was derived from the sale of controlled substances. (*Id.* at 3).

Immediately after the stop, claimant Garcia–Ancelmo met with Trillo at Wayne County Memorial Hospital, in Goldsboro, North Carolina. (Anthony Decl. at 9–10). There, claimant Garcia–Ancelmo told Trillo that he had been stopped and the defendant funds seized. (*Id.*).

## COURT'S DISCUSSION

### A. Standard of Review

Claimants' motions rests on Rule 56 of the Federal Rules of Civil Procedure.[4] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). This standard is met when "a reasonable jury can reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation." *Myrick v. Prime Ins. Syndicate, Inc.*, 395 F.3d 485, 489 (4th Cir.2005). On the other hand, when "the evidence as a whole is susceptible of more than one reasonable inference, a jury issue is created," and summary judgment should be denied. *Id.* at 489–90.

---

**2.** Claimant Garcia–Ancelmo did not own the car. Rather, the car was titled to claimant Lucia Covarrubias. (Jordan Decl., DE 4–1, at 1, 4).

**3.** Sergeant Miller was aware of Wayne County Sheriff's Office intelligence indicating that claimant Garcia–Ancelmo was involved in controlled substance activities. (Jordan Decl., at 2).

**4.** Although not material to the disposition of claimants' motion, the court notes that it is unclear whether the issues presented therein more properly are considered under Federal Rule of Civil Procedure 12(b)(1), as a motion to dismiss for lack of subject matter jurisdiction.

Summary judgment is not a vehicle for the court to weigh the evidence and determine the truth of the matter, but rather contemplates whether a genuine issue exists for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). Nevertheless, such inferences "must still be within the range of reasonable probability" and the court should issue summary judgment "when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." *Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 241 (4th Cir.1982) (quoting *Ford Motor Co. v. McDavid*, 259 F.2d 261, 266 (4th Cir.1958)). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. Accordingly, the court must examine the materiality and the genuineness of the alleged fact issues in ruling on this motion. *Id.* at 248–49, 106 S.Ct. 2505.

The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate with specific evidence that there exists a genuine issue of material fact requiring trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

B. Analysis

The parties dispute the effect of the Civil Asset Forfeiture Reform Act ("CAF-

RA"), Pub. L. No. 106–185, 114 Stat. 202 (2000), codified in relevant part at 18 U.S.C. §§ 981 & 983. Prior to August 23, 2000, civil asset forfeiture proceedings were governed exclusively by 19 U.S.C. § 1615. *See* 8 U.S.C. § 1324, note; CAF-RA, Pub.L. No. 106–185 § 21; *see also* 18 U.S.C. § 981(d) (1994). That statute provides that "the burden of proof [in a civil asset forfeiture proceeding] shall lie upon [the] claimant," provided "[t]hat probable cause ... be first shown for the institution of such suit or action [by the government.]" 19 U.S.C. § 1615.

In 2000, CAFRA amended the statutory scheme governing civil asset forfeiture actions, adding 18 U.S.C. § 983, and altering the burden of proof. In relevant part CAFRA, 18 U.S.C. § 983, provides that, in a civil asset forfeiture action:

1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture;

2) the Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture; and

3) if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C. § 983(c). Under the revised statutory scheme, the government, as plaintiff, bears the burden of proof throughout the case bringing civil asset forfeiture in line with other civil proceedings. *See id.* By altering the burden of proof, the statute affords claimants greater protection against wrongful deprivation of

property. *See United States v. $493,850.00 in U.S. Currency*, 518 F.3d 1159, 1168–69 (9th Cir.2008); *see also* 146 Cong. Rec. H2040–01, 2051 (Statement of Rep. Jackson–Lee); *id.* at 2052 (statement of Rep. Barr).

■ The parties essentially dispute whether "probable cause" is an independent requirement imposed in all civil asset forfeiture proceedings by 19 U.S.C. § 1615, or whether it was an element of § 1615's burden of proof, and was eliminated for purposes of civil asset forfeiture proceedings with the passage of § 983(c). On the one hand, claimants contend that CAFRA left intact "probable cause" as a requirement; in essence arguing 19 U.S.C. § 1615 imposes upon the government a threshold requirement to demonstrate probable cause to "get in the courthouse door." *See $493,850.00 in U.S. Currency*, 518 F.3d at 1167–68. On the other hand, the government argues that CAFRA's provisions are inconsistent with § 1615, because prior to CAFRA's passage "probable cause" merely was an element of the trial burden of proof.

The court need not resolve the parties' dispute. Assuming the government is required to demonstrate probable cause as a prerequisite to filing suit, claimants' motion for summary judgment must be denied because probable cause existed here.[5]

■ "Probable cause" is defined as "reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. Leak*, 123 F.3d 787, 792 (4th Cir.1997). In the context of civil asset forfeiture, the Fourth Circuit has explained that probable cause exists where there is "a substantial connection ... between the property forfeited and the criminal activity defined by the statute." *Id.* (quoting *United States v. $95,945.18, U.S. Currency*, 913 F.2d 1106, 1110 (4th Cir.1990)). When making the probable cause determination, the court is not to consider evidence piecemeal, but rather must consider evidence within the totality of the circumstances at issue. *United States v. Thomas*, 913 F.2d 1111, 1117 (4th Cir.1990). In so doing, the court need not reject hearsay statements, but

---

**5.** Although the court declines claimants' invitation to wade into the murky waters created by CAFRA and its effect on existing asset forfeiture law, the court briefly notes that, in light of Fourth Circuit precedent existing·at the time CAFRA was enacted, claimants' argument is a dubious one. The Fourth Circuit previously identified probable cause to be an element of the burden of proof. *See United States v. Leak*, 123 F.3d 787, 792 (4th Cir. 1997) ("Once the government makes the showing of probable cause, *the burden of proof shifts* to the claimant.") (internal quotations and citations omitted) (emphasis added). Logically, then, as CAFRA, 18 U.S.C. § 983(c), shifted the burden of proof to the government it follows that CAFRA superceded 19 U.S.C. § 1615's probable cause requirement as that statute previously applied to civil forfeiture actions. *See United States v. 30 Acre Tract of Land, More or less, Located at 524 Cheek Road, Ramseur, Columbia Township, Randolph Cnty., N.C.*, 425 F.Supp.2d

704, 708 n. 3 (M.D.N.C.2006) ("[T]he only difference between pre-CAFRA and post-CAFRA case law in the Fourth Circuit is the government's heightened burden of proof; the government must now establish that the property is subject to forfeiture by a preponderance of the evidence and not just a showing of probable cause."); *United States v. $10,00.00 in U.S. Currency*, No. 1:00–CV–23, 2002 WL 1009734, at *4 (M.D.N.C. Jan. 29, 2002) (noting that government only had to show probable cause to carry its burden of proof; *United States v. 100 Chadwick Drive, Kings Mountain, N.C.*, 913 F.Supp. 430, 435–36 (W.D.N.C.1995) (discussing probable cause only in burden of proof); *Schwartz v. United States*, 582 F.Supp. 224, 227 (D.Md. 1984) (addressing 19 U.S.C. § 1615 in RICO forfeiture action and discussing the "probable cause to institute the forfeiture action" requement as part of the ultimate burden of proof).

instead may consider them if there is "substantial basis for crediting the hearsay." *Id.*

The evidence viewed in the light most favorable to the government demonstrates probable cause existed at the time suit was filed, because it evidences a substantial connection between the defendant funds and a violation of 21 U.S.C. §§ 801 et seq. Claimant Garcia–Ancelmo's connection to the drug trade has been known since at least November 2011. As a result of that connection, claimant Garcia–Ancelmo came into contact with Trillo, who served as a money laundering contact for profits gained from illicit controlled substance activities. On February 16, 2012, claimant Garcia–Ancelmo contacted Trillo and requested to meet him in or around Goldsboro, North Carolina, for the purpose of delivering $308,000.00 to be laundered. While claimant Garcia–Ancelmo was en route to meet Trillo, he was stopped and the defendant funds were seized. This evidence supports a finding of probable cause for a number of reasons. First, Trillo specifically targeted individuals involved in the sale of illicit controlled substances. Second, the date and location of the proposed meeting between claimant Garcia–Ancelmo and Trillo correspond to the date and approximate location of the seizure in question. Finally, the amount of money seized approximates the amount claimant Garcia–Ancelmo was to deliver to Trillo.

Claimants raise a number of arguments in opposition to the government's proffered evidence. Specifically claimants contend the government should be prohibited from using certain evidence in defense of their motion, pursuant to Federal Rule of Civil Procedure 37 because the government previously failed to disclose the evidence, or otherwise object to its production in response to discovery requests. In the alternative, claimants argue, even if the evidence is not excluded under Rule 37, all declarations relied on by the government in defense of claimants' motion, and most especially the Anthony declaration, are replete with hearsay and thus unreliable. Claimants' arguments are without merit.

First, claimants contend that the Anthony declaration, which establishes the facts most pertinent to the government's case, was not previously disclosed or objected to in discovery, despite being responsive to discovery requests served on the government, and urge the court to exclude that document pursuant to Federal Rule of Civil Procedure 37, citing *Southern States Rack & Fixture v. Sherwin–Williams*, 318 F.3d 592 (4th Cir.2003). *Southern States* guides the court's discretion when fashioning appropriate discovery sanctions in myriad circumstances, most especially at trial. *See id.* at 594–96. However, given the procedural scenario in the case at bar, the court concludes that, even if the government has committed a discovery violation, such violation does not warrant sanctions in this instance.

If probable cause to file is a free-standing requirement, which must be met before the government can file a civil asset forfeiture action, it follows that the government's conduct in post-filing discovery is immaterial to the probable cause determination. The issue presented by claimants motion is whether the government permissibly could file a complaint. *See $493,850.00 in U.S. Currency*, 518 F.3d at 1167–68 (noting that probable cause is a requirement to "get in the courthouse door"). To allow procedural rules governing issues arising once inside the courthouse would impose upon the government too great a burden at this preliminary stage.[6] In addition, claimants' argument is

---

6. This is not to suggest, however, that a prop-    erly filed motion to exclude, made pursuant to

inconsistent with other analogous legal proceedings. For example, when the government comes before a magistrate judge to request a warrant, that proceeding is conducted *ex parte.* The information relied upon to demonstrate probable cause only may be attacked through filing of a motion to suppress, not through allegations of improper discovery conduct.

■ Similarly, in civil asset forfeiture proceedings evidence obtained in violation of the Fourth Amendment cannot be used to support a probable cause determination. *see One 1958 Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 696–702, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965); *United States v. Taylor,* 13 F.3d 786, 788–89 (4th Cir. 1994); *see also United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1062–63 (9th Cir.1994), *superceded by statute on other grounds, as recognized by Horne v. U.S. Dep't of Agric.,* 750 F.3d 1128 (9th Cir.2014). However, claimants' motion does not sound as one to suppress evidence. Nowhere do claimants complain of a Constitutional violation. To the contrary, claimants only argue that exclusion is warranted based on civil discovery principles inapplicable at this stage of the case.

■ Claimants next contend that the court should disregard the statements in all three declarations because those documents contain are unreliable hearsay. When making a probable cause determination the court need not reject hearsay statements outright, but instead may consider them if there is "substantial basis for crediting the hearsay." *Thomas,* 913 F.2d at 1117. Here, to the extent the court has relied on hearsay, there is a substantial basis for crediting such hearsay. The Jordan, Trillo, and Anthony declarations are internally consistent with each other and use similar language when relaying the purported hearsay statements contained therein.

Claimants mount a substantial attack on the Anthony declaration as being unreliable. Claimants contend that the information contained in the Anthony declaration is insufficient to support a showing a probable cause because it is informed by Anthony's corroboration with the unreliable Sanchez–Correa. Claimants cite *United States v. Wilhelm,* 80 F.3d 116 (4th Cir. 1996), for the proposition that information obtained through an unreliable cooperating witness must be excluded. Claimants' argument misses the mark. Although the Anthony declaration notes that Sanchez–Correa is "confirm[ing] information" pertinent to the investigation, (Anthony Decl., at 12), the Anthony declaration notably never indicates that Anthony's initial observations regarding the evidence gathered from the wiretap was informed by Sanchez–Correa. In addition, the Anthony declaration only discusses Sanchez–Correa's involvement with this case as part of the ongoing criminal investigation into claimant Garcia–Ancelmo. It does not suggest that Sanchez–Correa had any involvement with the criminal investigation prior to the government filing its complaint. Viewing the evidence in the light most favorable to the government, as the court must on a motion for summary judgment, claimants have failed to undermine the veracity of Anthony's declaration.

Accordingly, claimants' partial motion for summary judgment is denied. Assuming, *arguendo,* that 19 U.S.C. § 1615 imposes upon the government an independent obligation to demonstrate probable cause to bring a suit, the government has carried its burden. Based on its review of

Federal Rule of Civil Procedure 37, would not be considered on the merits of the government's civil asset forfeiture claim.

the evidence, the court is convinced that the government possessed more than mere suspicion that defendant funds substantially were connected to criminal activity at the time it filed the instant case. Claimants' contentions to the contrary are unavailing. Where the relevant inquiry is whether the government had probable cause to file the suit, claimants' motion to exclude evidence undisclosed in discovery, under Federal Rule of Civil Procedure 37, cannot be granted. As explained, requiring the government to possess probable cause before bringing a case to court and then subjecting the evidence upon which the government's probable cause determination is based to the strictures of the Rules of Civil Procedure, at this juncture, would be illogical. Moreover, to the extent claimants contend the Anthony declaration is not entitled to consideration, where it contains hearsay statements of an unreliable informant, the court does not read the declaration as such. Nowhere does the declaration suggest that the content of claimant Garcia–Ancelmo's conversations with Sanchez–Correa, discovered pursuant to a lawful wire tap, was informed or influenced by Sanchez–Correa's later cooperation.

## CONCLUSION

Based on the foregoing, claimants' motion for summary judgment, (DE 90), is DENIED in PART. The court HOLDS in ABEYANCE decision on the remaining portion of claimants' motion, the alternative ground resting on the merits of the case, pending completion of discovery, consistent save as modified here, with the deadlines contained in the court's previous order. (DE 107). The parties shall complete their discovery by October 20, 2015. Claimants may supplement their motion in reliance on any discovery by November 20, 2015. The government's response to remaining part of claimants' motion shall be due 21 days from date of service of any supplement by claimants or expiration of their deadline to supplement, whichever first expires.